**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Daniel James FOWLIE, Defendant–Appellant.**

**No. 91–50383.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1993.

Decided June 13, 1994.

William J. Kopeny, James D. Riddet, and Cherif Bassiouni, Santa Ana, CA, for defendant-appellant.

Patrick W. McLaughlin and Jonathan S. Shapiro, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.

Opinion by Judge WILLIAM A. NORRIS; Concurrency by Judge FARRIS; Dissent by Judge REINHARDT.

WILLIAM A. NORRIS, Circuit Judge:

In an opinion filed May 2, 1994, we vacated Fowlie's conviction on count 2 and affirmed his convictions on counts 1, 12–14 and 20. *See United States v. Fowlie,* 24 F.3d 1059 (9th Cir.1994). We now affirm his convictions on counts 4–7, 9, 21, 22, 25 and 26.

Fowlie contends that his prosecution for counts 4–7, 9, 21, 22, 25 and 26 is barred by the statute of limitations because the offenses occurred more than five years before the date of the indictment. The statute provides that "no person shall be prosecuted ... unless the indictment is found or the information is instituted within five years after such offense shall have been committed." 18 U.S.C. § 3282. However, Congress has added an exception that "[n]o statute of limitation shall extend to any person fleeing from justice." 18 U.S.C. § 3290. The district court ruled that the indictment was timely because Fowlie was "fleeing from justice" within the meaning of § 3290 during the period he was in Mexico. We agree. Judge Farris and I write separately because we have reached the same result but for different reasons.

The district court made the following findings of fact: (1) Fowlie left Rancho Del Rio a few days prior to the search on March 1, 1985; (2) he was expected to return; (3) defendant did not return to Rancho Del Rio but went instead to Mexico; (4) sometime in March, 1985, he summoned James Ellis and Ivan Summers to meet him in Rosarita Beach, Mexico; (5) the meeting took place on March 27, 1985; (6) he asked Ellis, a family friend, to fix up the ranch and requested that Ellis transport various belongings to Mexico, including his airstream trailer and boat; (7) during a separate meeting with Ivan Summers at Rosarita Beach, Fowlie told Summers that Rancho Del Rio had been raided by the police; and (8) at a subsequent meeting in Cabo San Lucas in October, 1985, Fowlie told Summers that he would never

return to the United States. The district court concluded on these facts that Fowlie was "fleeing from justice" within the meaning of § 3290.[1]

■ Although we accept the district court's findings of fact as not clearly erroneous, we review the ultimate "fleeing from justice" question *de novo* because legal concepts that require us to exercise judgment dominate the mix of fact and law. *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ In order to prove flight under § 3290, the government must show by a preponderance of the evidence that Fowlie acted with an intent to avoid prosecution. *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir.1982) (standard of proof is preponderance of the evidence); *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir.1976) ("fleeing from justice" requires some "volitional act" coupled with intent). In this case the record leaves no doubt that Fowlie had the requisite intent to avoid prosecution. When he left his ranch in California before it was raided, he intended to return, but after learning of the raid, decided to abandon the ranch as his place of residence. He changed his residence to Rosarita Beach, Mexico, and moved his business there.[2] On this record, it is clear that in moving his residence and his business to Mexico, he acted with the intent to avoid prosecution in California.

It is not so clear that Fowlie's failure to return from Mexico, coupled with his change of residence and place of business, satisfies the conduct element of § 3290. I conclude, however, that Fowlie's case is controlled by

our holding in *United States v. Wazney*. After learning of the warrant for his arrest, Wazney failed to return to his home and disappeared into the surrounding metropolitan area of Los Angeles. We held that even though Wazney had not left the jurisdiction, he was "fleeing from justice" because "[i]t is enough that an accused leaves his usual place of abode and conceals himself for the purpose of avoiding arrest or prosecution." *Wazney*, 529 F.2d at 1289. We explained that "[i]n modern large and heavily populated districts it is almost as easy to avoid arrest or prosecution by concealing oneself within the district as by fleeing the district." *Id.*

Like Wazney, Fowlie did not return to his home after learning that he was wanted for arrest. I recognize that unlike Wazney, Fowlie did not conceal himself by disappearing into a large metropolitan area. Rosarita Beach is a small community just south of Tijuana, and there is no evidence that he went out of his way to conceal his presence there. He did, however, take affirmative steps to avoid arrest and prosecution by changing his residence to Mexico and moving his business there. I believe that if Wazney's conduct in failing to return to his home and concealing himself in Los Angeles is sufficient to satisfy the conduct prong of the flight test, we must hold that Fowlie's conduct in failing to return to his ranch and moving his residence and his business to Mexico is also sufficient.[3] Both Wazney and Fowlie took significant affirmative steps to avoid prosecution.[4]

In sum, I find no meaningful basis for distinguishing this case from *Wazney*. Wazney was held to be fleeing from justice for

---

1. In concluding that Fowlie had engaged in flight, the district court in part relied on the "constructive flight" doctrine developed in *United States v. Catino*, 735 F.2d 718 (2d Cir.1984) and *Jhirad v. Ferrandina*, 536 F.2d 478 (2d Cir. 1976). Because I conclude that this case is controlled by Ninth Circuit precedent, I see no reason to address the Second Circuit's "constructive flight" doctrine.

2. Because the record does not tell us whether Fowlie learned of the raid before or after he went to Mexico, I give him the benefit of the doubt by assuming he first learned of the raid after he arrived in Mexico.

3. The record contains no evidence that the government unreasonably delayed extradition proceedings after learning that Fowlie was living in Rosarita Beach.

4. *United States v. Durcan*, 539 F.2d 29 (9th Cir. 1976) is inapposite. In *Durcan* we held only that the government failed to prove the accused had the requisite intent to avoid prosecution when he travelled from Florida to Canada. *Durcan*, 539 F.2d at 31–32. We did not hold that travelling from Florida to Canada did not satisfy the conduct requirement of 18 U.S.C. § 921(a)(15) or § 3290.

not returning home and disappearing into the surrounding metropolitan area; Fowlie did not return home, remained in Mexico after hearing the news of the raid, and moved his residence and business to Mexico with the intent to avoid prosecution. On these facts, I believe that Fowlie was "fleeing from justice" within the meaning of § 3290 from March 27, 1985 to June 14, 1987. I conclude, therefore, that § 3290 did not bar the government from prosecuting Fowlie for the crimes alleged in counts 4–7, 9, 21, 22, 25 and 26.[5]

FARRIS, Circuit Judge, concurring:

Judge Norris and Judge Reinhardt focus on the extent to which Fowlie actively hid himself from the police. I write separately to emphasize my view that the government did not need to provide factual evidence of "affirmative steps" that Fowlie took to hide himself. The government met its burden of proving flight by showing that Fowlie knew he was wanted by the authorities and *intentionally thwarted* arrest by remaining abroad.

The statute of limitations ensures that one accused of a crime has an adequate opportunity to gather exculpatory evidence. The theory is that the best opportunity to do so occurs while the tracks are fresh. One who has notice but fails to come forward to defend cannot be heard to complain that the tracks have faded. The pivotal issue is notice and a timely opportunity to defend. A defendant with notice cannot by deliberately absenting himself thwart the process. Time stops until the accused makes "a good faith effort to surrender." *United States v. Gonsalves,* 675 F.2d 1050, 1055 (9th Cir.), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982).

We consistently have held that to meet its burden of proving that the accused fled or concealed himself with the intent to avoid arrest or prosecution, "the prosecution need only prove that the defendant knew that he was wanted by the police and that he failed to submit to arrest." *United States v. Ballesteros–Cordova,* 586 F.2d 1321, 1323 (9th

Cir.1978); *Gonsalves,* 675 F.2d at 1052; *United States v. Wazney,* 529 F.2d 1287, 1289 (9th Cir.1976). The statute of limitations is not tolled "for unintentional delays, such, for example, as one caused by an open move to a new residence where the accused is readily accessible to careful law enforcement officers." *Wazney,* 529 F.2d at 1289. We have given defendants who remained abroad the benefit of the statute of limitations when they have established through their actions and statements that despite their failure to return, they never intended to avoid arrest or prosecution. *See, e.g., Caplan v. Vokes,* 649 F.2d 1336, 1341–42 (9th Cir.1981); *United States v. Durcan,* 539 F.2d 29, 31–32 (9th Cir.1976).

In contrast to the defendants in *Caplan* and *Durcan,* Fowlie's actions and statements are sufficient to establish that he remained in Mexico with the intent of avoiding arrest or prosecution. After learning of the raid, Fowlie moved his personal belongings and business to Mexico and stated his intent never to return to the United States. The timing and nature of these facts are significant.

REINHARDT, Circuit Judge, dissenting from the affirmance of the convictions on counts 4–7, 9, 21, 22, 25 and 26:

I disagree with Judge Farris' and Judge Norris' conclusion that the statute of limitations was tolled during Fowlie's time in Mexico. In my view, Fowlie's decision to remain abroad—and any actions he may have taken in order to facilitate that decision—cannot be construed as "fleeing from justice" within the meaning of 18 U.S.C. § 3290. I cannot imagine a more direct rejection of the plain meaning of "fleeing" than holding that it applies to remaining, or staying put. My colleagues simply disregard the clear language of § 3290 and adopt a construction of that section that is the precise opposite of that intended by Congress.

Although Judge Norris purports to express no opinion regarding the "constructive flight" doctrine adopted by the Second Cir-

---

**5.** I agree with Judge Reinhardt that Fowlie's act of contesting extradition did not constitute

"flight." *See* Reinhardt, J., dissenting, Part II.

cuit, and Judge Farris is strangely silent on the issue, their opinions could well establish that doctrine as the law of this circuit, contrary to all of our past precedent. While Judge Farris simply echoes the Second Circuit's reasoning and Judge Norris emphasizes Fowlie's purported "affirmative steps" of changing his residence and relocating his business, the difference is largely irrelevant. Remaining put is usually accompanied by some "affirmative steps," at least as Judge Norris appears to understand that term. In substance, therefore, both opinions follow the rule of the Second Circuit, a rule until today adopted by no other circuit: people who "decline to return" *to* a jurisdiction are said to have "fled" *from* it. *See Jhirad v. Ferrandina*, 536 F.2d 478, 483 (2nd Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976) (*Jhirad II* ).

It should be clear that neither Judge Norris nor Judge Farris concludes that Fowlie actually fled from the United States to Mexico, or indeed to any other place.[1] Instead,

they find that Fowlie's conduct *after his arrival* in Mexico constitutes flight within the meaning of § 3290. They reach this conclusion despite the fact that Fowlie lived openly and notoriously in Mexico, in a residence known to all interested persons, and despite the fact that Fowlie took no steps to conceal his whereabouts from anyone.

## I.

In every one of the relevant cases in this circuit, we have read § 3290 as imposing both an intent and an affirmative conduct requirement. The prosecution must prove by a preponderance of the evidence that the accused, with the intent to avoid arrest or prosecution, either left the jurisdiction or concealed his whereabouts. *See United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir.1976); *Gonsalves*, 675 F.2d at 1054. Action and intent must coincide: the action taken to avoid arrest must be "knowing," not innocent. *Compare Wazney*, 529 F.2d at

---

1. Nonetheless, following the lead of the district court, Judge Norris' description of the circumstances of Fowlie's arrival in Mexico is misleading. Judge Norris relates an edited version of the district court's Supplemental Findings of Fact and Conclusions of Law. According to this chronology, (1) Fowlie left the ranch prior to the search, (2) he was expected to return, (3) he did not return but instead went to Mexico. The logical import of this description is that the actions of leaving the ranch and of going to Mexico were separate and distinct. Such a description is, in fact, consistent with the district court's findings of fact; however, it is wholly unsubstantiated by the evidence. Were Judge Norris to adhere more carefully to the record and present the facts more objectively, he would write instead: 1) Fowlie left his ranch prior to the search and went to Mexico, and 2) he was expected to return but did not. . The substantial deviation from the actual facts in Judge Norris' reporting of the events colors the entire presentation of his opinion.

The district court was even bolder than Judge Norris: it specifically found that Fowlie went to Mexico *after* the search of his ranch on March 1, 1985. However, it too cites no evidence in the record to support this finding. Despite the fact that it was the government's burden to establish flight, the evidence showed only that Fowlie left his ranch during February, prior to the search, and was already in Mexico by sometime in March. No witnesses testified regarding the precise timing or circumstances of Fowlie's departure to or arrival in Mexico, nor was any documentary evidence submitted on the issue. More-

over, the government's pretrial memorandum stated that the evidence would show that Fowlie went abroad *prior* to the raid, as do *all* of Fowlie's moving papers. There is simply no support for the district court's chronology, or for Judge Norris' refashioning of it, which implies circumstances directly contrary to those asserted by both parties.

Although the district court's findings are marred by careless language and bold assertions unsupported by the evidence, Judge Norris purports to accept them "as not clearly erroneous." (In another example, the district court stated that Fowlie was "concealing himself" in Mexico without providing *any* factual findings in support of that conclusion either. The government submitted no evidence whatsoever that Fowlie "hid" within any reasonable interpretation of that term. As the government acknowledges, Fowlie lived openly and notoriously in Mexico from March 1985 onwards. Thus, even Judge Norris does not attach legal significance to the district court's use of the words "concealing himself.")

The fact is that as a matter of law the district court's findings *are* clearly erroneous. As noted above, when the prosecution attempts to toll the statute of limitations under § 3290, it must prove the facts asserted by a preponderance of the evidence. *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir.), *cert. denied*, 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982). Here, it made no attempt to do so. Accordingly, the absence of any facts in the record supporting the district court's factual determinations means that those determinations are *necessarily* "clearly erroneous."

1289 (no tolling for "unintentional" delay, such as "an open move to a new residence"); *with Gonsalves,* 675 F.2d at 1052 (tolling justified when the accused "knowingly secretes himself").

The district court found that Fowlie had the requisite intent to avoid prosecution as of March 27 and thereafter, and I agree with that finding. It is not because of lack of intent that Judge Farris and Judge Norris err, but because of the lack of concurrent action. On March 27 and thereafter—regardless of his purpose, desire, or hope of avoiding arrest—Fowlie stayed put in Mexico. His departure for Mexico and his arrival in that country occurred well before the date on which the district court found that intent existed.

Recognizing that he must look to conduct that occurred on or after March 27, when Fowlie was already in Mexico, Judge Norris distorts both the facts and the relevant precedents in his attempt to meet the conduct part of the conduct coupled with intent requirement. He adopts a definition of conduct that is wholly unprecedented and that looks not to the act of fleeing or even of staying put, but to incidental acts designed to facilitate the act of remaining abroad. On the other hand, Judge Farris, following the lead of the district court, simply ignores the conduct requirement. The only difference between the district court's approach and Judge Farris' is that the district court relies openly upon the "constructive flight" doctrine, while Judge Farris does so implicitly.[2] Despite the superficial differences between Judge Farris' and Judge Norris' approaches, it is unlikely that, except in certain narrow circumstances, there will be any practical distinction between the two—or between their approaches and that of the district court and the Second Circuit. All the approaches suffer from a common defect: they ignore our past case law and the plain language of § 3290; they all equate staying put with fleeing.[3]

A.

The constructive flight doctrine as adopted by Judge Farris sees flight in the absence of conduct. It asserts that there is no meaningful difference between a person who leaves the jurisdiction with an intent not to return and one who develops that intent while living openly outside the country. *See Jhirad II,* 536 F.2d at 483. Under that doctrine, the term "flight" is given a meaning that is precisely the opposite of what it ordinarily means. Instead of running away, it means staying put; instead of action, it means inaction.

While there is language in our decisions that the prosecution satisfies its burden of proving flight by showing that a defendant who knew he was wanted failed to "submit" to arrest, *see, e.g., Gonsalves,* 675 F.2d at 1052, every case tolling the statute of limitations under § 3290 has relied on defendant's affirmative conduct of fleeing or concealing himself. As we observed in *Wazney,* "the word 'fleeing' connotes the performance of some volitional act." 529 F.2d at 1289. Accordingly, *Wazney* emphasized the defendant's purposeful movement of "leav[ing] his usual place of abode and conceal[ing] himself for the purpose of avoiding arrest," *see* 529 F.2d at 1289; *Gonsalves* described flight as occurring when a defendant "hid[es] out" or "knowingly secretes himself," *see* 675 F.2d at 1052; *United States v. Ballesteros–Cordova,* 586 F.2d 1321, 1324 (9th Cir.1978), found flight when the defendant broke away from immigration inspectors and ran back across the border to Mexico. Recognizing the obvious distinction between "flight" and "failure to surrender," we have specifically declined the prosecution's invitation to equate the two.

---

**2.** The Second Circuit established the constructive flight doctrine in two cases, *Jhirad II* and *United States v. Catino,* 735 F.2d 718 (2d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). The court adopted the doctrine, originally created by a magistrate, "concededly without precedent." *Jhirad II,* 536 F.2d at 483. No other circuit has followed the Second Circuit's lead.

**3.** They also ignore the well-established principle that criminal limitations statutes are "to be liberally interpreted in favor of repose." *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970); *United States v. Habig,* 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968); *Gonsalves,* 675 F.2d at 1055; *Caplan,* 649 F.2d at 1341 n. 7.

*United States v. Durcan,* 539 F.2d 29, 32 (9th Cir.1976).[4]

As these cases demonstrate, we have always required the congruence of bad intent and *bad action.* Under the constructive flight doctrine, in contrast, no *act* of flight or concealment is required as long as a person outside the jurisdiction where the offense occurred *decides* not to return. The doctrine holds that a defendant's mere failure to turn himself into authorities when he learns he is "wanted" is flight and that the statute of limitations is tolled until the defendant takes affirmative steps to return. Concurrence at pp. 6238–39 (Farris, J.); *Jhirad,* 536 F.2d at 483–84; *Catino,* 735 F.2d at 722. The constructive flight doctrine thus reverses the rule enacted by Congress: instead of relying on the defendant's affirmative action of flight to toll the statute of limitations, the statute is tolled *unless* the defendant performs the affirmative action of return.

### B.

To avoid the forthright adoption of the constructive flight doctrine, so clearly inconsistent with our past precedent, Judge Norris scours the record seeking affirmative action by Fowlie that can serve to justify a conclusion that Fowlie's non-conduct meets § 3290's conduct requirement. Yet, like the petitioner in *Caplan v. Vokes,* 649 F.2d 1336, 1341 (9th Cir.1981), for whom § 3290 was deemed inapplicable, and unlike the defendant in *Wazney,* Fowlie lived abroad openly, making no effort to conceal himself. See *Wazney,* 529 F.2d at 1289 (§ 3290 applies when defendant "conceals himself for the purpose of avoiding arrest," but not when delay in prosecution caused by "an open move to a new residence where the accused is readily accessible to careful law enforcement officers"). Nonetheless, Judge Norris interprets *Wazney*'s explicit concern for concealment as encompassing conduct far removed from what that opinion contemplates. Judge Norris somehow transmogrifies "concealment" into any "significant affirmative steps to avoid prosecution."[5] Based upon this wholly unwarranted act of one-judge alchemy, Judge Norris then finds that § 3290's conduct requirement is satisfied because Fowlie took "affirmative steps to avoid arrest and prosecution by changing his residence to Mexico and moving his business there."

There are a number of reasons why Judge Norris' analysis is in error. First, as explained in greater detail in note 1, *supra,* Judge Norris' description of the facts is high-

---

**4.** Although *Durcan* involved the "fugitive from justice" provision of 18 U.S.C. § 921(a)(15), our construction of that provision was specifically controlled by *Wazney*'s prior construction of the "similar language" in § 3290. *Durcan,* 539 F.2d at 31. Judge Ely, the author of *Durcan,* had written *Wazney* some months previously.

**5.** Moreover, not only does Judge Norris expand the scope of § 3290 beyond that described in our past precedents, his reading of the statute ignores even their most basic justifications. The majority quotes a sentence from *Wazney* that says much on this point. In explaining why "flight" can be interpreted to include concealment, the *Wazney* court states that: "[i]n modern large and heavily populated districts it is almost as easy to avoid arrest or prosecution by *concealing* oneself within the district as by *fleeing* the district." 529 F.2d at 1289 (emphasis added). There, the action of concealment is deemed functionally equivalent to that of fleeing: both make arrest difficult. In all of our cases finding flight, action is emphasized not merely to corroborate motive, but because of its effect on law enforcement.

Our cases' concern about the bad effect of the defendant's actions reflects the congressional be-

lief that where the defendant makes it impossible for the prosecution to locate him by "fleeing from justice," the balance between the government's need for time to discover and investigate a crime, and the defendant's right to avoid perpetual jeopardy for past offenses, tips in favor of the government. *Gonsalves,* 675 F.2d at 1052 (citing 104 U.Pa.L.Rev. 1111, 1113 (1956)). *Gonsalves,* like *Wazney,* looks to the effect of the defendant's affirmative actions, stating that: "[f]or the purposes of the 'fleeing from justice' issue, hiding out from one set of federal law enforcement authorities is equivalent to hiding out from all of them; the investigation is hampered either way." *Id.* at 1052–53; *see also United States v. Morgan,* 922 F.2d 1495, 1497 (10th Cir.1991) (congressional intent of tolling statute of limitations for conduct that will "necessarily impede the investigation" of defendant's crimes).

This justification simply does not apply here. *Only* the non-action of remaining in Mexico made Fowlie's arrest more difficult, *not* his purported affirmative acts of "changing residence" or "moving the business"—and even Judge Norris appears to concede, at least for purposes of legal theory, that simply remaining in Mexico, without more, does *not* constitute flight.

ly misleading. Fowlie was a resident of Costa Rica who had travelled extensively, had lived abroad, in Europe and Latin America, had run his business from abroad, and in fact had only operated his ranch in the U.S. for approximately seven months prior to the raid. There was no finding by the district court that Fowlie relocated his residence and business from the United States to Mexico, because the evidence shows that generally in these matters his locus was international, at least as much as American. Judge Norris simply creates this factual finding himself, yet it forms the entire basis for his argument.[6]

More important, even assuming Judge Norris' version of events, these facts are insufficient to support a finding of flight under our precedents. *Every* one of our cases finding flight has relied on the defendant's act of fleeing, hiding or concealing himself. *Gonsalves,* 675 F.2d at 1052 (fleeing from another jurisdiction); *Wazney,* 529 F.2d at 1289 (concealment); *Ballesteros–Cordova,* 586 F.2d at 1322 (running away from customs officials); *cf. Caplan,* 649 F.2d at 1341 (no tolling for "mere absence" from jurisdiction). The conduct to which Judge Norris refers all occurred after Fowlie had arrived in Mexico: it did not include any act of fleeing, hiding or concealment, but consisted entirely of actions incidental to Fowlie's remaining abroad.

While Judge Norris' novel requirement of "significant affirmative steps to avoid prose-cution" may sound substantial in theory, it is essentially empty in practice, a mere formality—at least in this case. Here, the requirement was apparently satisfied, as far as Judge Norris is concerned, when Fowlie moved some of his belongings from the United States to Mexico and continued his drug dealing, actions which Judge Norris abstracts into "changing his residence . . . and moving his business." The affirmative steps requirement, as Judge Norris appears to see it, would almost always be met by a person who stays abroad and neither flees nor conceals himself. Any person who chooses to remain somewhere will act to facilitate his stay there. One person may do business in the foreign country, *see Catino,* 735 F.2d at 720; another may have his family join him there, *see Jhirad II,* 536 F.2d at 481; a third may invite other visitors; a fourth may send for some of his possessions; the list is endless.[7] Any of a number of ordinary actions that necessarily accompany the fact of foreign residence and are completely unrelated to even the most generous reading of the word "flight" may be deemed "significant," using Judge Norris' deceptive terminology. By allowing such facilitative acts to satisfy § 3290's conduct requirement, Judge Norris expands the statute's scope tremendously and ignores its plain meaning. Although Judge Norris may believe that he has established an abstract difference between his approach and the Second Circuit's, and thus avoided creating a direct conflict with our own cases, construing the significant affirma-

---

**6.** No one will be more surprised by the majority's opinion than the parties to this case, for whom the statute of limitations is tolled based on facts never once addressed in their motions, briefs or argument on the issue.

**7.** I mentioned above that in certain narrow circumstances there might be a practical difference between Judge Norris' approach and that of Judge Farris. In a case where, for example, the defendant merely continued to stay in a hotel room and lived off his savings, Judge Norris might find insufficient "affirmative steps to avoid prosecution." However, Judge Norris' reasoning—that "if Wazney's conduct in failing to return to his home and concealing himself in Los Angeles is sufficient to satisfy the conduct prong of the flight test, we must hold that Fowlie's conduct in failing to return to his ranch and moving his residence and his business to Mexico is also sufficient"—is not very encouraging in this regard. As described above, Judge Norris

views one's residence as wherever one happens to live at the time. That leaves one's business, but not many people can afford to live abroad long without engaging in some sort of business. Under the law as it has been up to now, engaging in business wherever you are located does not constitute flight.

Nonetheless, were I forced to choose among a bad lot, I would prefer Judge Norris' requirement of "significant affirmative steps" to Judge Farris' even more unfortunate misconstruction of § 3290 or the Second Circuit's expressly stated constructive flight doctrine. I suspect that a later court faced with a case under § 3290 will—if it reads the requirement of significant affirmative steps in light of our past precedent, as it should—give the requirement more substance than does Judge Norris himself, at least as his approach to it is manifested by this case.

tive steps requirement as he does would in practice result in our following the Second Circuit in lock-step, and enforcing its unwarranted conversion of a "flight" statute into a "remaining abroad" provision.

## II.

The district court also held that Fowlie's act of contesting extradition amounted to "flight." Again, the district court relied on precedent from the Second Circuit, which had previously accepted this argument as an extension of the constructive flight doctrine. *See Catino*, 735 F.2d at 722–23. The *Catino* court held that a defendant must make a choice between exercising his right to oppose extradition and gaining the benefit of the statute of limitations. *Id.* at 723. However, no other circuit has held that lawful resistance to extradition makes one a fugitive for the purposes of § 3290. Nor do I believe that the Second Circuit's reading of § 3290 is reasonable.

As described above, our past cases limit "flight" to cases of actual fleeing, hiding or concealment. Opposing extradition bears no resemblance to these acts. The underlying reasoning of our cases, moreover, cannot be extended to encompass the act of contesting extradition. While we have held that the statute of limitations is made inapplicable where the government's failure to bring a prosecution in a timely fashion is attributable to the "unacceptable conduct of the accused," *Wazney*, 529 F.2d at 1289; *Caplan*, 649 F.2d at 1341, contesting extradition is unquestionably not "unacceptable conduct." It is, instead, the exercise of a legal right. More important, the government's failure to indict cannot be attributed to the defendant's action of contesting extradition: there is simply no causal connection between the two events. When the government attempts to extradite someone, it demonstrates that it knows the person's whereabouts and that it is prepared to focus its prosecutorial resources on the person. In addition, the evidentiary requirements of an extradition request demonstrate the government's ability to obtain an indictment.

## III.

For the foregoing reasons, I believe that Judge Farris and Judge Norris err in affirming the district court's ruling that § 3290 tolled the statute of limitations. At no time was Fowlie "fleeing from justice" within the meaning of that provision. The statute is clear on its face. Because the statute of limitations ran before Fowlie was indicted for the criminal conduct charged in counts 4–7, 9, 21, 22, 25 and 26, his convictions on those counts should be reversed.