**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MAN-SEOK CHOE,
            *Petitioner-Appellant,*

v.

ADAM N. TORRES, U.S. Marshal, in
his official capacity,
            *Respondent-Appellee.*

No. 06-56634

D.C. No.
CV-06-06745-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
August 7, 2007—Pasadena, California

Filed April 29, 2008

Before: Alex Kozinski, Chief Judge, Johnnie B. Rawlinson,
Circuit Judge, and Harold Baer, Jr.,* Senior District Judge.

Opinion by Chief Judge Kozinski

---

*The Honorable Harold Baer, Jr., Senior U.S. District Judge for the
Southern District of New York, sitting by designation.

---

## COUNSEL

William J. Genego, Nasatir, Hirsch, Podberesky & Genego, Santa Monica, California, for the petitioner-appellant.

Daniel J. O'Brien, Assistant U.S. Attorney; George S. Cardona, Acting U.S. Attorney; Thomas P. O'Brien, Assistant U.S. Attorney; Daniel Scott Goodman, Assistant U.S. Attorney, Los Angeles, California, for the respondent-appellee.

---

## OPINION

KOZINSKI, Chief Judge:

We consider whether the district court erred in denying Man-Seok Choe's habeas corpus petition challenging certification of his extradition to the Republic of Korea.

### Facts

Choe is a Korean citizen and a resident of Los Angeles. In the 1990s, he traveled frequently to Korea on business, where he was acquainted with important political figures. During

one of his visits to Korea, Choe learned that he was under criminal investigation. Choe thereupon left Korea in secret and returned to Los Angeles. After Korea requested Choe's extradition, the United States took him into custody. Pursuant to 18 U.S.C. § 3181 *et seq.*, Magistrate Judge Marc L. Goldman determined that Choe was subject to surrender under the terms of the Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Korea, June 9, 1998 ("Treaty"), and certified two crimes for extradition.[1] Choe then petitioned the district court for a writ of habeas corpus. The district court summarily denied his petition, relying on the magistrate judge's determination that Choe is extraditable. Choe appeals.[2]

## Analysis

Because the district court denied Choe's petition in a minute order, we review the magistrate judge's memorandum and order certifying the crimes for extradition. *Barapind* v. *Enomoto*, 400 F.3d 744, 748 (9th Cir. 2005) (en banc) (per curiam).

### 1. Acceptance of Bribe Through Good Offices

[1] Article 2 of the Treaty provides that an "offense shall be an extraditable offense if . . . it is punishable under the laws" of both nations. Treaty art. 2(1). This is known as the "dual criminality" requirement. *Clarey* v. *Gregg*, 138 F.3d 764, 765 (9th Cir. 1998). In determining whether Korea has satisfied the dual criminality requirement, we consider "the

---

[1] Courts may only certify crimes for extradition. 18 U.S.C. § 3184. The ultimate decision whether to extradite is left to the Secretary of State. *Id.*; *Blaxland* v. *Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003).

[2] While the magistrate judge's determination that Choe is extraditable is not subject to direct appeal, it is subject to collateral review by way of habeas corpus. *See Oen Yin-Choy* v. *Robinson*, 858 F.2d 1400, 1402 (9th Cir. 1988).

totality of the conduct alleged.” Treaty art. 2(3); *see also Clarey*, 138 F.3d at 766 (“The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical.”); *Emami* v. *U.S. Dist. Court*, 834 F.2d 1444, 1450 (9th Cir. 1987) (“[A]ll the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions.”); *In re Russell*, 789 F.2d 801, 803 (9th Cir. 1986) (“[T]o satisfy the ‘dual criminality’ requirement, . . . [i]t is enough that the conduct involved is criminal in both countries.”). We review de novo the determination that an offense is extraditable. *United States* v. *Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir. 1987).

The extradition papers allege that Choe improperly influenced the Korean government on behalf of Alsthom Co. Alsthom submitted a bid to supply the Korean government with high speed rail cars for a national rapid transit railway system. The papers allege that Choe promised Myung Soo Hwang, who was then the secretary general of the ruling party and a member of the National Assembly, a “sufficient reward” if Hwang exerted his influence on Alsthom’s behalf and the bid were successful. Alsthom won the contract and promptly paid Choe over $11 million; Choe, in turn, paid Hwang approximately $400,000.

[2] It’s clear that this alleged conduct—promising and then paying a bribe to a public official in exchange for an official act—is a crime under U.S. law. Choe’s conduct, if committed in the United States, would be punishable under several statutes including: 18 U.S.C. § 201(b), which makes it illegal to bribe any public official in order to influence his official actions; 18 U.S.C. § 666(a)(2), which makes it a crime to bribe recipients of federal funds; and 18 U.S.C. §§ 1343, 1346, which allow for prosecution of individuals who deprive citizens of the honest services of a public official. *See United States* v. *Blumeyer*, 114 F.3d 758, 765 (8th Cir. 1997). In

short, the "totality of the conduct alleged," Treaty art. 2(3), is "punishable under the laws" of both nations, *id.* art. 2(1).

Choe nevertheless contends that the offense isn't extraditable because Article 2 of the Treaty further requires that the Korean and U.S. laws be "substantially analogous."[3] Choe argues that the Korean law under which he has been charged —Acceptance of Bribe Through Good Offices[4] —isn't "substantially analogous" to any U.S. law. The Korean statute provides: "Any person who receives, demands or promises any money or interest in connection with a mediation of matters belonging to the duties of the public official, shall be punished . . . ." Choe points out that this language seems to criminalize conduct that we would consider mere lobbying. According to Choe, the vague phrase "in connection with a mediation of matters belonging to the duties of the public official" is broad enough to cover the activities of a lobbyist who helps provide access to public officials in a legitimate attempt to influence their official actions.

**[3]** But Choe misconceives the meaning of the term "substantially analogous." Just three months before the Treaty was signed, we adopted the following definition: "[W]hen the laws of both the requesting and the requested party appear to be directed to the same basic evil, the statutes are substantially analogous." *Clarey*, 138 F.3d at 766 (internal quotation marks and citation omitted). Korea's statute is "directed to the same basic evil" as our bribery laws, namely, the corruption of public officials. The fact that the Korean law is broader

---

[3]Article 2 provides:

> [A]n offense shall be an extraditable offense . . . whether or not the constituent elements of the offense differ under the laws in [Korea and the United States], provided that the offenses under the laws of both States are substantially analogous.

Treaty art. 2(3).

[4]This is the title of the Korean statute as translated in the extradition papers.

than ours, and thus punishes conduct that would not be unlawful here, is of no consequence, so long as the particular conduct Choe is charged with is prohibited in both countries. *Id.*

[4] Choe further contends that the United States[5] hasn't established probable cause that he committed the acts with which he's charged. The Treaty requires "such information as would provide reasonable grounds to believe that the person sought has committed the offense for which extradition is requested." Treaty art. 8(3)(c). The magistrate judge found that the United States satisfied this requirement, and we must uphold that finding if "competent evidence" supports it. *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984).

[5] The magistrate judge's memorandum and order discusses the extensive evidence that Alsthom paid Choe $11 million for his services, but doesn't mention any evidence that Choe promised Hwang a reward, that Choe gave Hwang anything, or even that Choe met with Hwang. Though the extradition papers accuse Choe of doing these things, accusations are not evidence. *See In re Sauvage*, 819 F. Supp. 896, 902-03 (S.D. Cal. 1993). This failure is particularly significant because the Korean prosecutor who prepared the extradition papers had before him the complete statement of Ki Choon Ho, Choe's alleged accomplice in the crime, yet there's no indication in the papers that Ho implicated Choe in bribing Hwang.

To be sure, the magistrate judge had evidence that Choe may have committed *some* violation of the Acceptance of Bribe Through Good Offices statute. That statute prohibited Choe from "receiv[ing]" Alsthom's money "in connection with a mediation of matters belonging to the duties of the public official," so it's likely that Choe violated the Korean law the moment he allegedly took Alsthom's money, whether

---

[5]Pursuant to Article 18 of the Treaty, the United States represented Korea's interests before the magistrate judge.

or not he then paid any of it over to Hwang. But the Treaty isn't satisfied by proof that Choe probably committed *some* violation of the statute; it requires probable cause that Choe committed the particular acts of which he's accused, namely, bribing Hwang. *See* Treaty art. 8(3)(c); *see also* 18 U.S.C. § 3184 (extradition requires "evidence sufficient to sustain *the* charge" leveled against the fugitive) (emphasis added); *Quinn* v. *Robinson*, 783 F.2d 776, 787 (9th Cir. 1986) (section 3184 requires probable cause to believe the accused committed the particular "charged offense").

[6] Because there's no competent evidence to support the magistrate judge's finding of probable cause that Choe committed the particular acts "for which extradition is requested," Treaty art. 8(3)(c), we reverse the district court's denial of habeas corpus as to this offense.[6]

## 2. Stowaway Control Act

Choe's petition for a writ of habeas corpus seeks relief from the magistrate judge's certification for Choe's violation of the Stowaway Control Act and, curiously, the parties discuss this issue at length in their briefs. But the magistrate judge did not certify this offense for extradition, so Korea can't prosecute Choe for it, *see* Treaty art. 15(1)(a), p.4608 *infra*, and the United States can't appeal the magistrate judge's adverse determination, *see United States* v. *Doherty*,

---

[6]As we see below, Korea also has a conventional bribery statute. *See* p.4604 *infra*. The United States urges us to certify Choe's alleged bribe to Hwang as a violation of that statute. But changing the legal theory can't cure the lack of evidence that Choe bribed Hwang. In any event, we don't have the power to certify new offenses for extradition. If the government believes it can extradite Choe on the charge that he violated Korea's conventional bribery statute by bribing Hwang, it must make that case before an extradition court, which has the power to determine in the first instance whether Korea's extradition papers support such a charge and whether the evidence is "sufficient to sustain" it. 18 U.S.C. § 3184; *see United States* v. *Doherty*, 786 F.2d 491, 501-03 (2d Cir. 1986).

786 F.2d 491, 501-03 (2d Cir. 1986). The issue is thus not properly before us and we do not consider it.

### 3.   Offering Bribe

After Korean authorities launched an investigation into Choe's lobbying activities, Choe allegedly bribed a Korean police officer, Yoon Ki Jeon, to exert his influence to close the investigation. Such conduct, if proven, would violate a Korean statute titled Offering Bribe. Choe concedes that this is an extraditable offense but claims that the evidence does not support probable cause. As discussed above, *see* pp.4602-03 *supra*, the Treaty requires "such information as would provide reasonable grounds to believe that the person sought has committed the offense for which extradition is requested." Treaty art. 8(3)(c). Here again, the magistrate judge found that the United States, representing Korea's interests, satisfied this burden; we must uphold the magistrate judge's finding if "competent evidence" supports it. *Zanazanian*, 729 F.2d at 626.

[7] The magistrate judge's memorandum and order contains a detailed account of the evidence supporting probable cause to believe Choe bribed Officer Jeon in an effort to stop the police investigation, including the Korean prosecutor's summary of testimony from Choe's accomplice, Ki Choon Ho, who implicates Choe in a scheme to bribe Officer Jeon. Ho, who allegedly aided Choe in his lobbying activities, provides names, dates, an explanation of how she became aware Korean authorities were investigating their lobbying activities, the financial breakdown of the bribe and how it was apportioned, how she met Officer Jeon and the way in which Officer Jeon was paid.

Ho was convicted in Korea and sentenced to 18 months in prison for her role in bribing Officer Jeon. The magistrate judge also relied on the Korean prosecutor's summary of testimony from another witness, Sang In Kim, who indicated

that he introduced Ho to Officer Jeon, that he was present when Ho offered Officer Jeon a bribe and that he delivered money to Officer Jeon on Ho's behalf. The magistrate judge also considered other evidence such as a bank statement documenting the bribe and the prosecutor's summary of testimony from another Korean police officer, but it is unnecessary to discuss these in any detail as there is more than enough evidence to support the magistrate judge's finding.

[8] Choe contends this evidence cannot support a finding of probable cause because the Korean prosecutor's summaries aren't reliable. But if the evidence submitted in the extradition papers is certified and authenticated in accordance with the admissibility requirements of Article 9 of the Treaty[7] and 18 U.S.C. § 3190[8] —which is not disputed here—the magistrate judge is authorized to consider it. *See, e.g.*, *Collins* v. *Loisel*, 259 U.S. 309, 317 (1922) ("[U]nsworn statements of absent witnesses may be acted upon by the committing magistrate."); *Zanazanian*, 729 F.2d at 627 (police reports summarizing witnesses statements are competent evidence); *Emami*, 834 F.2d at 1450-52 (upholding extradition based on affidavit containing summaries of witnesses' statements).

---

[7]Article 9 of the Treaty provides that documents are admissible when "they are certified by the principal diplomatic or consular officer of the Requested State resident in the Requesting State; or [when] they are certified or authenticated in any other manner accepted by the law of the Requested State." Treaty art. 9(a)-(b).

[8]18 U.S.C. § 3190 provides that documents

> offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

**[9]** Choe also attacks Ho's credibility. He points out that Ho had every reason to shift blame to him to reduce her own culpability, and that her statements aren't supported by any other witness. But the Treaty merely requires "such information as would provide reasonable grounds to believe" that Choe committed the crime. Treaty art. 8(3)(c). Here, Ho's lack of credibility is merely a weakness in Korea's case; it does not "completely obliterate[ ]" the evidence of probable cause. *Barapind*, 400 F.3d at 749. Choe further contends that the magistrate judge erred by refusing to allow him to conduct discovery on Ho's credibility, but this wasn't error because any such evidence wouldn't be admissible. *Id.* ("[E]vidence that merely controverts the existence of probable cause, or raises a defense, is not admissible.").

## 4.  Statute of Limitations

**[10]** Article 6 of the Treaty provides that extradition for a crime may be denied if punishment for the crime would be barred by the statute of limitations of the United States had the crime been committed here.[9] In the United States, the statute of limitations for the crime of bribing a public official—the only crime which can properly be certified for extradition, *see* pp.4604-07 *supra*—is five years. 18 U.S.C. § 3282. As the final bribe to Officer Jeon was paid in February 1996, the statute of limitations would have lapsed in February 2001. However, under U.S. law, the statute of limitations is tolled if the

---

[9]At oral argument, the United States argued for the first time that we do not have the authority to deny extradition on the basis of the Treaty's statute of limitations provision because this provision is couched in discretionary terms. *See* Treaty art. 6 ("Extradition *may* be denied . . . when . . . punishment of the offense . . . would have been barred because of the statute of limitations of the Requested State had the same offense been committed in the Requested State.") (emphasis added). According to the United States, only the Executive Branch can take action on the basis of discretionary Treaty language. Because this argument was raised for the first time on appeal, it is waived. *Cf. Broad* v. *Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996).

accused flees from justice. 18 U.S.C. § 3290. To toll the statute, the United States must show that Choe (1) "inten[ded] to avoid arrest or prosecution" and (2) committed a "volitional act" of concealment. *See United States* v. *Wazney*, 529 F.2d 1287, 1289 (9th Cir. 1976). We review the magistrate judge's factual findings for clear error, but the "ultimate 'fleeing from justice' question" we review "de novo because legal concepts that require us to exercise judgment dominate the mix of fact and law." *United States* v. *Fowlie*, 24 F.3d 1070, 1072 (9th Cir. 1994).

[11] In October 1999, well within the statute of limitations period, Choe booked a flight from Korea. He was stopped at the airport and prevented from boarding. His passport was confiscated and he was questioned by Korean authorities regarding his lobbying activities and alleged bribe to Officer Jeon. He was interrogated again later that month. Some two months later, Choe left Korea without a passport and without informing the Korean government of his destination. *Cf. Caplan* v. *Vokes*, 649 F.2d 1336, 1341 (9th Cir. 1981) (defendant did not flee from justice because he remained in the country until the initial investigation was complete and he subsequently provided the authorities with the address of his new foreign residence). The magistrate judge did not clearly err in finding, based on this evidence, that Choe was aware that he was the subject of a criminal investigation at the time he left Korea and, consequently, that he did so in order to avoid being taken into custody.[10]

[12] With respect to the second element of fleeing from justice, the accused commits a "volitional act" of concealment

---

[10]We reject Choe's argument that he could not have had the intent to avoid prosecution because no charges were pending when he fled Korea. It is well settled that one can flee from justice for purposes of tolling the statute of limitations even if no charges are pending at the time of flight. *United States* v. *Ballesteros-Cordova*, 586 F.2d 1321, 1323 (9th Cir. 1978) (per curiam). Here, Choe knew he was under investigation for serious crimes when he disappeared.

when he takes "significant affirmative steps to avoid prosecution." *Fowlie*, 24 F.3d at 1072. Here, Choe's secret flight from Korea was a "significant affirmative step[ ] to avoid prosecution." *Id.*

**[13]** Choe argues that he did not conceal himself because he lived openly in Los Angeles, operated his business in his own name and applied for U.S. citizenship. But the fact that he could have taken additional steps to conceal his whereabouts does not mean that Choe was not a fugitive from justice. He may have felt safe enough being thousands of miles away from the government that was seeking to prosecute him. In *Fowlie*, for example, we held that defendant concealed himself in Mexico from U.S. authorities even though there was "no evidence that he went out of his way to conceal his presence." *Id.* Choe's "volitional act[s]" of concealment occurred when he left Korea clandestinely and placed himself beyond the jurisdiction of the Korean authorities.

Choe also argues that the statute of limitations should not be tolled because the Korean authorities were aware that Choe applied for citizenship in the United States in 2001, yet did not request his extradition until 2005. According to Choe, this demonstrates "inaction or lack of diligence on the part of the [Korean] government." To the extent there was a delay, this is a matter left for the Secretary of State's consideration. *See Kamrin* v. *United States*, 725 F.2d 1225, 1227 (9th Cir. 1984) ("The delay may not . . . serve as a defense to judicial extradition proceedings.").

### 5.  Rule of Specialty

Article 15 of the Treaty provides that Choe cannot be "detained, tried or punished" in Korea for any offense unless we "grant[ ]" extradition for that particular offense. Treaty art. 15(1)(a). As only one offense—allegedly bribing Officer Jeon in violation of the Offering Bribe statute—satisfies all the

Treaty requirements, this is the only offense for which certification is proper.

*     *     *

**[14]** We **AFFIRM** the district court's order denying habeas corpus as to the charge that Choe bribed Officer Jeon, but **REVERSE** the district court's denial of habeas corpus as to the charge that Choe bribed Hwang. On remand, the district court shall enter an order striking the magistrate judge's certification for that offense as a proper basis for extradition, but shall otherwise continue to deny the petition.

**AFFIRMED in part, REVERSED in part and REMANDED.**