**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE TRINIDAD MARTINEZ
SANTOYO,

        *Petitioner - Appellant*,

  v.

LASHA BOYDEN, U.S. Marshal for
the Eastern District of CA; MINDY
MCQUIVEY, Chief, U.S. Probation
Office for the Eastern District of CA;
MERRICK B. GARLAND, Attorney
General; ANTONY J. BLINKEN,

        *Respondents - Appellees*.

No. 24-1967

D.C. No.
2:23-cv-00447-
DJC-JDP

OPINION

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Argued and Submitted February 10, 2025
San Francisco, California

Filed March 11, 2025

Before: John B. Owens, Lawrence VanDyke, and Anthony
D. Johnstone, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

### Extradition

Affirming the district court's denial of a habeas corpus petition challenging an order certifying the petitioner's extradition to face charges in Mexico, the panel held that the "lapse of time" language in the extradition treaty between the United States and Mexico does not incorporate the Sixth Amendment Speedy Trial Clause.

The panel addressed other arguments in a concurrently filed memorandum disposition.

## COUNSEL

Carolyn M. Wiggin (argued) and Rachelle Barbour, Assistant Federal Public Defenders; Heather E. Williams, Federal Public Defender; Federal Public Defender's Office, Sacramento, California; for Petitioner-Appellant.

Elliot C. Wong (argued) and Alstyn Bennett, Assistant United States Attorneys; Nirav K. Desai, Assistant United States Attorney, Appellate Chief; Phillip A. Talbert, United States Attorney; Office of the United States Attorney, Sacramento, California; for Respondents-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

OWENS, Circuit Judge:

Jose Trinidad Martinez Santoyo appeals from the denial of his petition for a writ of habeas corpus, which challenged an order certifying his extradition to face charges in Mexico. He argues that the district court erred in holding that the extradition treaty between the United States and Mexico, Extradition Treaty, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, did not incorporate the U.S. Constitution's Sixth Amendment Speedy Trial Clause.[1] We have jurisdiction under 28 U.S.C. § 1291 and § 2253, and we affirm.

## I.  BACKGROUND

In January 2014, a judge in Mexico issued an arrest warrant for intentional aggravated homicide alleging that one month earlier, Santoyo shot a man twice in the head after a heated argument. In November 2018, Mexico requested that the United States provisionally arrest Santoyo. In accordance with the governing extradition treaty, the United States filed a complaint in the Eastern District of California in August 2021, seeking a provisional arrest of Santoyo with a view towards extradition. Santoyo was arrested on May 12, 2022, and he remained in custody until November 4, 2022, when he was released on bail pending resolution of his extradition proceedings.

---

[1] Santoyo also argues that the district court erred in upholding the extradition court's finding of probable cause, excluding a forensic report, and denying his motion to compel certain discovery. We address these arguments in a concurrently filed memorandum disposition, in which we affirm.

In July 2022, Mexico formally requested Santoyo's extradition for aggravated intentional homicide. Accompanying this request were the 2014 arrest warrant, eyewitness statements, a police investigative report, and an autopsy report. After extensive litigation, a magistrate judge certified the extradition on February 24, 2023.

Santoyo then challenged that certification via a petition for writ of habeas corpus. Relevant to this opinion, he argued that the Sixth Amendment's speedy trial right applied to the extradition proceedings, as the treaty prohibited extradition when the prosecution "for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party." Extradition Treaty art. 7. Santoyo contended that the "lapse in time" language necessarily incorporated a speedy trial right, and the delay between the issuance of Mexico's arrest warrant in January 2014 and the July 2022 formal extradition request mandated his release.

A different magistrate judge recommended rejecting that argument, and the district court agreed. Citing case law from several circuits (including ours), the district court held that the "lapse in time" language only referred to a statute of limitations, and not to the Sixth Amendment's speedy trial protections. And because there was no alleged statute of limitations problem, the extradition could proceed. Santoyo timely appealed from the denial of his habeas petition.

## II. DISCUSSION

### A. Standard of Review

"We review de novo the district court's denial of a habeas petition in extradition proceedings." *Rana v. Jenkins*, 113 F.4th 1058, 1063 (9th Cir. 2024) (citation omitted). Our

review is "severely limited." *Id.* (citation omitted). "We can review only 'whether: (1) the extradition magistrate judge had jurisdiction over the individual sought, (2) the treaty was in force and the accused's alleged offense fell within the treaty's terms, and (3) there is any competent evidence supporting the probable cause determination of the magistrate judge.'" *Id.* (citation omitted).

## B. Extraditions and the U.S.-Mexico Treaty

"Extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the [extradition] statute interposes a judicial function." *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006) (citation and alteration omitted); *see also* 18 U.S.C. § 3184 (federal extradition statute). Because extradition is a diplomatic process, the judiciary's role in extradition proceedings is very narrow. *See United States v. Knotek*, 925 F.3d 1118, 1132 (9th Cir. 2019).

Extradition proceedings begin when the country seeking extradition files a request with the State Department. *Patterson v. Wagner*, 785 F.3d 1277, 1279 (9th Cir. 2015). If the United States initiates judicial proceedings to extradite an accused in accordance with its treaty obligations, the extradition court must then hold an extradition hearing to determine whether to certify the accused for extradition. *Id.* As part of its review, it must determine whether there is probable cause to sustain the charge. *Id.* at 1279–80. If there is probable cause, the extradition court *must* certify the extradition to the Secretary of State, who ultimately determines whether to extradite the accused to the requesting state. *Id.*

We have emphasized that extradition hearings are not trials, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir.

2005), mini trials, *see Santos v. Thomas*, 830 F.3d 987, 992, 1007 (9th Cir. 2016) (en banc), nor "dress rehearsal[s] for trial," *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988) (citation omitted). Rather, they are "designed only to trigger the start of criminal proceedings against an accused; guilt remains to be determined in the courts of the demanding country." *Sainez v. Venables*, 588 F.3d 713, 717 (9th Cir. 2009) (citation omitted).

Here, the United States and Mexico have agreed to extradite those who have been charged with murder. Extradition Treaty, art. 1, 2(a). The treaty includes a "Lapse of Time" section, which provides: "Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party." Extradition Treaty, art. 7.

## C. The Treaty Does Not Encompass a Sixth Amendment Speedy Trial Right

For more than forty years, the law on delay in extradition hearings has been clear: While a "delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward . . . [t]he delay may not, however, serve as a defense to judicial extradition proceedings." *Kamrin v. United States*, 725 F.2d 1225, 1227 (9th Cir. 1984); *cf. Munaf v. Geren*, 553 U.S. 674, 698–99 (2008) (principles of comity and respect for foreign sovereigns may preclude courts from scrutinizing their actions). The language in question—"lapse of time"— does not alter this long-standing presumption.

As a preliminary matter, the Sixth Amendment's text does not support its application to extradition proceedings.

It provides, "[i]n all *criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI (emphasis added).  An extradition proceeding is not a criminal prosecution.  *See Martinez v. United States*, 828 F.3d 451, 457 (6th Cir. 2016) (en banc) (noting extradition proceedings "are not 'criminal prosecutions'"); *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978) ("[C]haracterizing [extradition] proceedings as 'criminal prosecutions' within the meaning of the sixth amendment . . . goes against the weight of authority and ignores the modest function of an extradition hearing."); *see also Santos*, 830 F.3d at 992 (noting extradition proceedings are not criminal trials "intended to ascertain guilt," and "neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure apply" (citation omitted)).  Rather, extradition is a diplomatic process by which the United States adheres to its treaty obligations by sending an individual sought by the requesting state to be prosecuted in that state.  *See Patterson*, 785 F.3d at 1279 ("[E]xtradition is a diplomatic process carried out through the powers of the executive, not the judicial, branch." (citation omitted)).

Even if an extradition treaty could provide for American constitutional protections, the plain text of this treaty does not incorporate the Sixth Amendment.  "The interpretation of a treaty, like the interpretation of a statute, begins with its text."  *Medellín v. Texas*, 552 U.S. 491, 506 (2008).  As Santoyo argues, the treaty includes a "lapse of time" provision, which implicates some sort of time bar.  However, lapse of time alone does not establish a Sixth Amendment violation.  This is because the speedy trial right does not prescribe a specific length of time and is context dependent. *See Barker v. Wingo*, 407 U.S. 514, 521 (1972) ("[T]he right to speedy trial is a more vague concept than other procedural

rights. It is, for example, impossible to determine with precision when the right has been denied.").

Therefore, to determine whether there has been a deprivation of the Sixth Amendment speedy trial right, courts must balance the length of the delay with other factors including "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. These factors are not exclusive, and none, including the length of delay, is "either necessary or sufficient, individually, to support a finding that a defendant's speed[y] trial right has been violated." *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008).

Because the Sixth Amendment right to a speedy trial does not bar prosecution or the enforcement of a penalty solely on the basis of a "lapse of time," the plain text of the treaty does not incorporate the Sixth Amendment or the balancing test required by the Supreme Court. *See Martinez*, 828 F.3d at 457–58 ("Because the Sixth Amendment does not establish a time limit, fixed or otherwise, before a trial must start, it does not create a rule that 'bar[s]' criminal prosecutions due to 'lapse of time.'"). As the Sixth Circuit noted en banc when considering the same argument under the same treaty provision, Santoyo's arguments "require us to add something to the Sixth Amendment that does not exist (a time bar)" and "to subtract requirements of the Sixth Amendment that do exist," such as the reason for the delay. *Id.* at 458.

In addition, an extradition court cannot consider the *Barker* and other relevant factors without exceeding its limited scope of review. The weighing of these factors would inevitably result in the very mini trials that we have cautioned against as "[t]he resolution of a speedy trial claim

necessitates a careful assessment of the particular facts of the case." *United States v. MacDonald*, 435 U.S. 850, 858 (1978) (noting "most speedy trial claims . . . are best considered only after the relevant facts have been developed at trial"); *see also Santos*, 830 F.3d at 991 ("It is fundamental that the person whose extradition is sought is not entitled to a full trial at the magistrate's probable cause hearing." (citation omitted)).

Crucially, the court would need to consider the reason for the delay, and consequently, compel a foreign sovereign to justify its actions and otherwise explain why the balance of factors weighs against a finding of a speedy trial violation. *See Yapp v. Reno*, 26 F.3d 1562, 1568 (11th Cir. 1994) ("A speedy trial inquiry would require [the extradition court], generally unfamiliar with foreign judicial systems and the problems and circumstances facing them, to assess the reasonableness of a foreign government's actions in an informational vacuum."); *cf. McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003) ("[T]he prosecution bears the burden of explaining pretrial delays."). However, "[f]oreign states requesting extradition are not required to litigate their criminal cases in American courts." *Santos*, 830 F.3d at 991. As such, the accused "does not have the right to introduce evidence in defense because that would require the government seeking his extradition 'to go into a full trial on the merits in a foreign country.'" *Id.* at 992 (citation omitted). Similarly, incorporating the Sixth Amendment would require the requesting state to litigate the merits of the speedy trial claim in the United States, which runs counter to the "principle[s] of comity" and "[r]espect for the sovereignty of other countries" which underpin the objectives of international extradition treaties. *Martinez*, 828 F.3d at 464 (citation omitted).

As the Sixth Circuit recognized, there is also the "question of fault." *Id.* In its speedy trial inquiry, the extradition court may need to consider whether an accused waived his Sixth Amendment right by evading the requesting state. *United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019) ("When a defendant causes a post-indictment delay, the defendant is deemed to have waived the right to a speedy trial."); *see also Martinez*, 828 F.3d at 464 ("Whether the State or a defendant is more to blame for untoward delays is '[t]he flag all litigants seek to capture' in a speedy-trial case." (citation omitted)).

The parties to the treaty, a Senate Committee report, courts, and the Restatement (Third) of Foreign Relations Law also have consistently read the "lapse of time" language as a statutes of limitations bar. "Because a treaty ratified by the United States is 'an agreement among sovereign powers,' we [may] consider[] as 'aids to its interpretation' the negotiation and drafting history of the treaty as well as 'the postratification understanding' of signatory nations." *Medellín*, 552 U.S. at 507 (citation omitted). In addition, "[a] construction of a treaty by the political department of the government, while not conclusive upon courts called upon to construe it, is nevertheless of weight." *United States v. Lombera-Camorlinga*, 206 F.3d 882, 887 (9th Cir. 2000) (en banc) (citation omitted).

Here, the United States has interpreted the "Lapse of Time" article as encompassing only statutes of limitations and has construed its obligations as requiring extradition when "the applicable statutes of limitations [are] complied with." Similarly, while Mexico includes the relevant statutes of limitations and its compliance thereof in its formal extradition request, it does not mention any purported speedy trial requirement.

The Senate Committee on Foreign Relations' report on the extradition treaties with various countries, including Mexico, also reads the "lapse of time" provision as a statute of limitations provision.  *See* S. Exec. Rep. No. 105-23 (1998).  The report includes a section titled "*Lapse of Time*," which provides that "[s]ome of the treaties include rules that preclude extradition of offenses barred by an applicable statute of limitations." *Id.* at 6.  The report does not include any discussion of the Sixth Amendment or speedy trial rights.  *See generally id.*; *see also Yapp*, 26 F.3d at 1567 (noting the Senate Executive Report on the extradition treaty between the United States and the Bahamas provided that the "lapse in time" provision "requires that the requested state deny extradition if the requesting State's statute of limitation bars the prosecution of the offense in question" (citation omitted)).

Courts have likewise read the "lapse of time" language in extradition treaties as statutes of limitations bars.  *See Martinez*, 828 F.3d at 462 (noting "[e]very case on the books has concluded that [the 'lapse of time'] phrase encompasses only statutes of limitations") (collecting cases).  Though we have not explicitly addressed the precise issue in this appeal before, we have, at least in passing, read "lapse of time" provisions as statute of limitations provisions.  *See, e.g.*, *Caplan v. Vokes*, 649 F.2d 1336, 1340–42 (9th Cir. 1981) (reading the "lapse of time" provision as a statute of limitations provision); *Theron v. U.S. Marshal*, 832 F.2d 492, 499 (9th Cir. 1987) (interpreting the "lapse of time" section as "establish[ing] the federal statute of limitations as the appropriate statute of limitations"), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997).

Furthermore, "it has long been settled that United States due process rights cannot be extended extraterritorially."

*Kamrin*, 725 F.2d at 1228.  In accordance with this principle, we have rejected other attempts to incorporate the Speedy Trial Clause into extradition treaties.  For example, we rejected the argument that a broad treaty provision "granting fugitives 'the right to use such remedies and recourses as are provided by the law of the requested Party,' . . . in effect impose[d] upon [the requesting state] the duty to comply with the speedy trial and due process clauses of the United States Constitution."  *Matter of Extradition of Kraiselburd*, 786 F.2d 1395, 1398 (9th Cir. 1986).  We explained that, "despite the 'remedies and recourses' provision in the treaty, [the requesting state's] only obligation was to comply with the applicable statute of limitations."  *Id.* (citation omitted).  Our holding today is consistent with this precedent.

The Restatement (Third) of Foreign Relations Law also lends support.  It includes a section about "*Extradition and periods of limitation*," and notes that "[n]early all extradition treaties provide for the effect of the passage of time."  Restatement (Third) of Foreign Relations Law § 476(e) (1987).  It explains that "under some treaties extradition is precluded if either state's statute of limitations has run," though "[i]f the treaty contains no reference to the effect of a lapse of time, neither state's statute of limitations will be applied."  *Id.*; *see also Yapp*, 26 F.3d at 1567 (citing the Restatement (Third) of Foreign Relations Law to note "the fact that for over a century, the term 'lapse of time' has been commonly associated with a statute of limitations violation"); *Martinez*, 828 F.3d at 463 (also citing the Restatement (Third) of Foreign Relations Law in support).

In sum, we join the Sixth and Eleventh Circuits in *Martinez* and *Yapp* and hold that the extradition treaty's "lapse of time" language does not incorporate the Sixth Amendment Speedy Trial Clause.  "To the extent there was

a delay, this is a matter left for the Secretary of State's consideration." *Man-Seok Choe v. Torres*, 525 F.3d 733, 741–42 (9th Cir. 2008).

**AFFIRMED.**