**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALDO OMAR CROTTE SAINEZ,
          *Petitioner-Appellant,*

v.

GEORGE W. VENABLES,
          *Respondent-Appellee.*

No. 08-56398

D.C. No.
3:08-cv-00819-H-
AJB

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
June 1, 2009—Las Vegas, Nevada

Filed December 2, 2009

Before: Ronald M. Gould, Johnnie B. Rawlinson and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Rawlinson

15793

---

**COUNSEL**

Jason I. Ser, Federal Defenders of San Diego, Inc., San Diego, California, for appellant Aldo Omar Crotte Sainez.

Christopher P. Tenorio, Assistant United States Attorney, San Diego, California, for appellee United States.

---

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Aldo Omar Crotte Sainez (Crotte)[1] appeals the denial of his petition for a writ of habeas corpus, challenging his arrest pending extradition on a Mexican arrest warrant. Because we conclude that the district court's probable cause determination is supported by the record, and its ruling on the statute of limitations issue was free from error, we affirm the district court's decision.

## I. BACKGROUND

On the evening of June 26, 1999, Daniel Sandoval Abundis

---

[1]Although the Ninth Circuit has titled this case as "Sainez," we will refer to the appellant as "Crotte," to conform to the briefs and record.

(Sandoval), Julio Cesar Sevillano Gonzalez (Sevillano), and other young men confronted Crotte's gang, "Los Tejones." A violent altercation ensued; Sandoval was shot and killed; and Sevillano was injured. Several witnesses gave signed, sworn statements describing the events.

Sevillano's first statement to authorities related that he and a group of twenty others arrived at Crotte's residence to defend Sandoval, whom the Los Tejones "had been bothering" a couple days earlier. Sevillano identified Crotte as the shooter of both Sandoval and himself.

Sevillano's subsequent statement reflected that he and his friends wanted to confront Los Tejones because Crotte had shot at them with what appeared to be a revolver on June 24, 1999, although no one was injured on that date. Sevillano represented that on June 26, his group went to Crotte's residence unarmed. He explained that Crotte ran out of the residence "holding the same weapon that he had used to shoot at us previously . . ." Sevillano confirmed that Crotte "started shooting at us" (Sevillano and Sandoval) and continued shooting as the pair retreated. Sevillano stated, "[w]hen ALDO was shooting us I felt my right hand injured and at the same time I felt my chest right under my left nipple injured, too . . ." Sevillano recalled noticing that Sandoval had "a hole on his shirt around the left part of his chest" and could not talk or move.

Neighborhood resident Maria Luisa Cuevas Duenas (Duenas) also witnessed the altercation and gave two statements to authorities. In her first statement, she explained that Crotte "took out a gun" and "shot at [some] individuals" who were throwing stones at his car. In her second statement, Duenas stated that Crotte was a close family friend whom she and her family housed when he visited from San Francisco. Duenas reported seeing a group of boys break the windows of her home and Crotte's vehicle while shouting for Crotte to come out. Duenas informed the officers that as Crotte ran out of his car, she "heard roaring, as pop of corn [sic], and every-

body started running all around . . .” Duenas noted that the front wall of her house had been damaged by shooting, which was the noise she heard “like corn popping.”

Salvador Gonzalez Gonzalez (Gonzalez), Duenas's husband, also gave a statement. Gonzalez saw a group of boys armed with guns in the street in front of his home. He heard them shouting and then “heard noise, like corn popping” when Crotte suddenly came running into the house. According to Gonzalez, the front wall of his house was damaged by gunshots.

Carmen Becerra Guerrero (Guerrero) observed “a bunch of boys and girls . . . take out guns from little haversacks and started to shoot towards [C]alle Milpa . . .” Guerrero stated that “suddenly these guys began to run while a young guy fall [sic] to the floor.”

Vicente Gonzales Cuevas (Cuevas), Duenas's and Gonzalez's son, saw about “25 guys who were throwing stones at his house and yelling,” and “three of them were carrying guns.” Cuevas “heard several explosions made by a firearm, then the guys who were attacking started retreating . . .”

Jose Antonio Nava Valadez (Valadez) was part of the group that went to fight Los Tejones. Valadez remembered that when his group yelled for Los Tejones to come out of the house, “a guy came out of his house, and started shooting towards where we were with his gun, and when we heard the shooting, we ran back . . . and when this guy stopped shooting, he went back into his house, so then we saw my friend DANIEL lying on the ground . . .” Valadez stated that the shooter fired his weapon “several times.”

Rogelio Rios Martinez (Martinez) was also part of the group that went to fight Los Tejones. He explained that several gunshots were fired, and he “saw his friend DANIEL falling down.”

A .22 caliber bullet was extracted from Sandoval's corpse, but it was impossible to determine the kind of gun from which it came. Nevertheless, on November 9, 1999, a judge in Mexico issued an arrest warrant for Crotte based on his probable perpetration of intentional simple homicide against Sandoval and bodily injuries against Sevillano.

Crotte was arrested at the San Ysidro, California, Port of Entry in December, 2006. Mexico requested extradition on March 23, 2007. At his extradition hearing before a magistrate judge, Crotte argued that the statute of limitations for both his homicide and battery charges had run under United States law, and that probable cause that he killed Sandoval was lacking. The magistrate judge certified Mexico's extradition request on the homicide charge only, because the statute of limitations had expired on the battery charge. The district court denied Crotte's habeas petition challenging the magistrate judge's finding of extraditability, and Crotte filed a timely appeal.

## II. STANDARD OF REVIEW

"We review de novo whether the district court erred in denying a habeas corpus petition challenging certification of an extradition order; we review factual questions, as determined by the extradition magistrate judge, for clear error." *McKnight v. Torres*, 563 F.3d 890, 892 (9th Cir. 2009) (citations omitted).

## III. DISCUSSION

### A. The Statute of Limitations

[1] Crotte conceded that the statute of limitations for the homicide charge had not run under Mexican law. However, Crotte argues that the United States statute of limitations bars his prosecution for the homicide charge under the United

States-Mexico Extradition Treaty. Article 7 of the Treaty, entitled "Lapse of Time," provides:

> Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party.

Extradition Treaty between the United States of America and the United Mexican States, May 4, 1978, 31 U.S.T. 5059, art. 7. "In determining what United States statute of limitations is applicable, this Court looks to the substantive offense under United States law which is most closely analogous to the charged offenses, and applies the statute of limitations applicable to that offense." *In re Extradition of Suarez-Mason*, 694 F.Supp. 676, 686 (N.D. Cal. 1988), *as amended*; *see also Clarey v. Gregg*, 138 F.3d 764, 767 (9th Cir. 1998) ("The object of Article 7 of the Treaty is to preclude extradition of a person whose prosecution in the United States would offend our national statute of limitations if he had committed his criminal conduct here.").

   **[2]** Crotte was charged with homicide. This charge falls under Article 213 of the State of Jalisco Criminal Code.[2] The magistrate judge found that the most analogous United States offenses to the Mexican homicide charge were murder, as defined by 18 U.S.C. § 1111,[3] and manslaughter, as defined by 18 U.S.C. § 1112.[4] The magistrate judge then determined

---

   [2]Crotte's arrest warrant indicates that the following elements are required to prove homicide under Article 213: "a) the previous existence of a human life, b) the loss of the same, and c) the causal link between the conduct and the result."

   [3]"Murder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a) (2003).

   [4]"Manslaughter is the unlawful killing of a human being without malice." 18 U.S.C. § 1112(a) (2008).

that the applicable statute of limitations for Crotte's crime was five years, as articulated in 18 U.S.C. § 3282.[5] Crotte does not argue that § 3282 is inapplicable, but contends that the statute of limitations expired because he was arrested in December, 2006, more than five years after Sandoval died on June 26, 1999. He argues that the Mexican arrest warrant should not toll the statute of limitations in Mexico because it does not constitute an indictment or information under the laws of the United States.

**[3]** The *Restatement (Third) of Foreign Relations Law* provides:

> For purposes of applying statutes of limitation to requests for extradition . . . the period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state, or of the filing of the request for extradition, whichever occurs first . . .

*Restatement (Third) of Foreign Relations Law* § 476, cmt. e (1987).

**[4]** Consistent with the *Restatement of Foreign Relations Law*, in *Jhirad v. Ferrandina*, 536 F.2d 478, 480 (2d Cir. 1976), the Second Circuit recognized an Indian document as the "functional equivalent of [a United States] indictment." We agree that for the purpose of a civil proceeding such as an extradition, a Mexican arrest warrant is the equivalent of a United States indictment and may toll the United States statute of limitations.

---

[5]"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (2003).

**[5]** Crotte's argument that the Mexican arrest warrant did not toll the statute of limitations because it is in no way analogous to a United States indictment lacks merit. We do not reach this conclusion by attempting to analogize a Mexican arrest warrant to an American indictment. Rather, we reach this conclusion by adhering to our established approach of giving credence to foreign proceedings. Indeed, we have declined to rule on the procedural requirements of foreign law out of respect for other nations' sovereignty "and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles." *Emami v. United States Dist. Court*, 834 F.2d 1444, 1449 (9th Cir. 1987) (citation omitted). *See also Theron v. United States Marshal*, 832 F.2d 492, 496, 499-500 (9th Cir. 1987), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997) ("[I]t would be inappropriate to engage in such an inquiry into the formal procedure a country uses in instituting prosecution.") (citation omitted).

**[6]** Giving credence to the arrest warrant issued by Mexican authorities, the five-month period between the date the homicide occurred and the issuing date of the Mexican arrest warrant was well within the five-year limitations period of section 3282,[6] rendering the extradition on the homicide charge timely. In short, Crotte's extradition was not barred by the applicable statute of limitations.

## B.   Probable Cause

**[7]** In an extradition proceeding, "[t]he magistrate's func-

---

[6]Crotte inexplicably mentions 18 U.S.C. § 3290 in his brief. This provision eliminates the statute of limitations for fugitives from justice. The government attempted to raise this argument before the magistrate judge, who found that the government had inadequately presented the issue. The district court confirmed that the government had not renewed the issue before it.

tion is to determine whether there is any evidence sufficient to establish reasonable or probable cause." *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (citations and internal quotation marks omitted). "Because the magistrate's probable cause finding is thus not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues, it must be upheld if there is any competent evidence in the record to support it." *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986) (citations and internal quotation marks omitted). "The extradition proceeding . . . makes no determination of guilt or innocence. It is designed only to trigger the start of criminal proceedings against an accused; guilt remains to be determined in the courts of the demanding country." *Valencia v. Limbs*, 655 F.2d 195, 198 (9th Cir. 1981) (citations omitted). "Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict." *Barapind v. Enomoto*, 360 F.3d 1061, 1070 (9th Cir. 2004) (citations and parenthesis omitted).

**[8]** The district court properly affirmed the magistrate judge's finding of probable cause because the record supports a reasonable inference that Crotte killed Sandoval on the evening of June 26, 1999. The magistrate judge relied on the sworn statements of Sevillano, Duenas, Gonzalez, and Valadez in making his probable cause determination. This reliance was proper under *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (recognizing that "statements contained in properly authenticated documents can constitute competent evidence to support a certificate of extradition") (citation omitted).

**[9]** Crotte invites us to weigh the witness' statements, arguing that their inconsistencies preclude a finding of probable cause. However, weighing the evidence is not a function we perform when we review the magistrate's probable cause determination. Instead, our role is to determine whether there is competent evidence in the record to support the magis-

trate's determination. *See Quinn*, 783 F.2d at 815. Because the record provides ample competent evidence that Crotte likely shot and killed Sandoval, the magistrate judge's finding of probable cause was not clearly erroneous. *See Manta v. Chertoff*, 518 F.3d 1134, 1145 (9th Cir. 2008) (upholding a magistrate judge's determination that there was probable cause to believe the accused committed the various fraud crimes she was charged with because there was competent evidence in the record); *see also Man-Seok Choe v. Torres*, 525 F.3d 733, 740 (9th Cir. 2008) ("[T]here [wa]s more than enough evidence to support the magistrate judge's finding."). Accordingly, the district court properly denied Crotte's petition challenging the magistrate judge's probable cause determination.

## IV.   CONCLUSION

Sufficient probable cause existed to establish Crotte as the shooter, making him answerable to Mexican authorities for the crime of homicide. Crotte's extradition was not time-barred, because his Mexican arrest warrant tolled the applicable statute of limitations. Sufficient probable cause existed to establish Crotte as the shooter, and thereby answerable to Mexican authorities for the crime of homicide.

**AFFIRMED.**