SUTTON, Circuit Judge,
concurring in part and dissenting in part.
Most people who commit crimes do not turn themselves in. They often flee, sometimes leaving the city of the crime, sometimes even the country. If a fugitive leaves the country, that complicates law *558 enforcement efforts. One trait of sovereignty is that countries have no legal, as opposed to moral, obligation to turn criminal suspects over to another country for prosecution. The point of extradition treaties is to prevent such crimes from going unpunished by imposing a golden rule obligation on each party to the treaty- — an agreement by each country to return haven-seeking fugitives to the other.
Avelino Cruz Martinez, it is fair to say, was not thinking about the golden rule when he shot two men at a New Year’s Eve party in a small Mexican village. Invoking the 1978 United States-Mexico extradition treaty, Mexico asked the United States to return Cruz Martinez to Mexico to be tried for murder. Cruz Martinez filed a habeas corpus petition, claiming that his extradition would violate Article 7 of the treaty, which prohibits extradition when “prosecution” or “enforcement” of the charged offense “has become barred by lapse of time according to the laws of the requesting or requested Party.” Extradition Treaty, U.S.-Mex., art. 7, May 4, 1978, 31 U.S.T. 5059. In particular, he argues that his extradition would violate (1) the relevant statute of limitations and (2) his Sixth Amendment right to a speedy trial.
I agree with the majority — and everyone else who has considered the matter — -that this provision covers statute-of-limitation violations. And I agree with the majority that the relevant American and Mexican statutes of limitations do not bar Cruz Martinez’s extradition. But I must part ways with the majority over its conclusion that the same phrase also incorporates the protections of the Speedy Trial Clause of the Sixth Amendment to the United States Constitution.
That innovation stands alone. The United States concluded its first extradition treaty in 1794. It has since concluded hundreds more, many of which include the phrase “barred by lapse of time” or something similar. For 221 years, not a single appellate court has interpreted any provision in any of those treaties — whether including these words or not — to extend the Sixth Amendment’s speedy-trial right to someone facing extradition. Indeed, virtually all of the relevant “lapse of time” cases do not even include a speedy-trial claim. Today’s decision brings more than two centuries of settled understanding to an end. By shoehorning speedy-trial protections into the phrase “barred by lapse of time,” the majority has given this mine-rim extradition treaty a meaning it does not have and in the process made nearly irrelevant the one meaning everyone thought it did have. After today’s decision, rest assured, extradition fights will turn on elastic speedy-trial claims, not fixed statute-of-limitations claims. Because every interpretive tool confirms that the phrase “barred by lapse of time” does not incorporate the constitutional speedy-trial right into this treaty, Cruz Martinez may not invoke that right to avoid standing trial in Mexico for a crime he agrees there is probable cause he committed. The'majority seeing things differently, I respectfully dissent.
A.
Text. “Extradition shall not be granted,” Article 7 says, “when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party.” Extradition Treaty, U.S.-Mex., art. 7, supra, 31 U.S.T. at 5064-65. The language thus covers only circumstances where prosecution is “barred by lapse of time.” Put less passively, time must do the barring. Yet the Sixth Amendment does not create a time bar on *559 trial initiation — a fixed time after which the trial must be called off. In contrast to statutes of limitations, which do set fixed time periods that bar prosecutions, the Sixth Amendment does no such thing. As the Supreme Court has explained, thé speedy-trial right is “consistent with delays” (and thus consistent with lapses of time) and “depends upon circumstances,” as it is “impossible to determine with precision when the right has been denied” in our system of “swift but deliberate” justice. Barker v. Wingo, 407 U.S. 514, 521-22, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (emphasis added and internal quotation marks omitted). The Sixth Amendment imposes not a fixed “time period” but a “relative,” “amorphous,” and “slippery” one. Id. at 522-23, 92 S.Ct. 2182. Because the Sixth Amendment does not create a fixed time limit before a trial must start, a “lapse of time” does not “bar” criminal prosecutions.
Not only does Cruz Martinez’s argument require us to add something to the Sixth Amendment that does not exist (a fixed time limit), it requires us to subtract requirements of the Sixth Amendment that do exist. A criminal defendant cannot win a Sixth Amendment challenge by pointing to a calendar and counting off the days. He must show that there was no good reason for the delay, that he asserted his rights during the delay, and that his trial was prejudiced by the delay. Id. at 530-33, 92 S.Ct. 2182. Given the four requirements for a Sixth Amendment claim, passage of time alone will not establish a speedy-trial violation. Yet Article 7 covers only lapse-of-time failings in a prosecution. It does not cover doctrines that bar prosecution due to the passage of time and more. No constitutional speedy-trial case to my knowledge has held that a time delay alone caused the violation. The inquiry always requires an absence of justification at a minimum for the delay. Because the treaty provision creates a lapse-of-time bar alone and because no precedent says that delay alone establishes a speedy-trial violation under the Sixth Amendment, the provision does not apply.
Another textual clue points in the same direction. The treaty does not cover any and all “lapse[s] of time” that may occur in a criminal case. It applies only to time lapses with respect to the “prosecution” or “enforcement” of an “offense.” That language naturally applies to statutes-of-limitations periods that “bar[j” the commencement of a “prosecution” or “enforcement” proceeding — which is just when extradition typically would be sought. That language also naturally applies to limitations periods that “bar[]” “penalties]” already handed down from being “enforce[d]” to the extent any exist. The same is not true for guarantees that apply after an indictment (or its equivalent) through the end of trial. Just as this treaty provision would not cover criminal procedure guarantees that apply to a trial already begun, it does not naturally apply to speedy-trial requirements that prohibit the criminal process, once started, from continuing. The speedy-trial right after all operates not by barring-the initiation of a prosecution but by preventing it from continuing, see United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and applies not at all to the execution of sentences -already pronounced, see United States v. Melody, 863 F.2d 499, 505 (7th Cir.1988). These rights, like trial guarantees, usually kick in outside the two periods in which extradition limits apply: (1) the initiation of a prosecution and (2) the enforcement of a “judicially pronounced penalty of deprivation of liberty.” Extradition Treaty, U.S.-Mex., art. 1(1), supra, 31 U.S.T. at 5061.-
*560 Context. Article 7’s neighbors reinforce this conclusion. Article 10(2) of the Treaty-sets forth the extradition procedures a requesting State must follow and requires every request to include “[t]he text of the legal provisions relating to the time limit on the prosecution or the execution of the punishment of the offense.” Extradition Treaty, U.S.-Mex., art. 10(2)(d), supra, 31 U.S.T. at 5066 (emphasis added). This disclosure requirement allows the requested State to verify whether extradition is “barred by lapse of time” without embarking upon a self-guided tour of another country’s laws. Article 10(2)’s own interpretation of “lapse of time” — it means “time limit” — confirms that the language covers only statutes of limitations, not a speedy-trial right as well. As Cruz Martinez acknowledges, a “time-bar provision” would apply only “to the operation of statutes of limitations.” Appellant’s Br. 47.
Background principles. In interpreting treaties, as in interpreting statutes, we consider not only text and context but also the background principles from which the language emerged. United States v. Emuegbunam, 268 F.3d 377,. 392 (6th Cir. 2001) (interpreting a treaty “consistent with the background presumption against implying personal rights in international treaties”). Those principles come to the same end. No extant case, treaty, or commentary endorses the notion that, for extradition purposes, the phrase “barred by lapse of time” refers to a speedy-trial guarantee on top of the limitations periods that fall naturally within its grasp. Treaties no less than statutes must be construed against the backdrop of long-settled usage. Courts have no license to depart from that long history.
Similar provisions in similar treaties ratified by the United States associate this phrase with limitations periods only. Take our treaty with Argentina, which equates “lapse of time” with the expiration of a “statute of limitations.” Extradition Treaty, U.S.-Arg., art. 7, June 10,1997, T.I.A.S. No. 12,866. Or take our treaty with France, which prohibits extradition if prosecution is “barred by lapse of time ” in the requested State but requires that State to consider “[a]cts in the [requesting State that would interrupt or suspend the prescriptive period.” Extradition Treaty, U.S.-Fr., art. 9, Apr. 23, 1996, S. Treaty Doc. No. 105-13 (1997) (emphasis added); see Black’s Law Dictionary 1321 (10th ed.2014) (defining “period of prescription” as “[t]he period fixed by local law as sufficient for obtaining or extinguishing a right through lapse of time. In addition to a fixed number of years, the period includes whatever further time is allowed by local law because of infancy, insanity, coverture, and other like circumstances.”). Or take our six treaties with the six countries of the Organization of Eastern Caribbean States, which authorize extradition despite a “lapse of time” — defined in terms of “the prescriptive laws” of the requesting or requested country. Extradition Treaties with Organization of Eastern Caribbean States, S. Treaty Doc. No. 105-19, at 11, 33, 55, 77, 98, 120 (1997). When transmitting those treaties to the Senate for its advice and consent, the President described. their six identical lapse-of-time provisions as “enabling] extradition requests to be granted irrespective of statutes of limitations” in any State. Id. at vii. None of these clauses demonstrates any desire to incorporate the Sixth Amendment into the words “barred by lapse of time.”
Before ratification of this treaty, the same phrase notably had long held a similar meaning in American law — in the context of state laws applying out-of-state statutes of limitations to out-of-state causes of action. Consider the Minnesota borrowing statute upheld by the Supreme *561 Court in Canadian Northern Railway Co. v. Eggen, 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920). The statute provided that, “[w]hen a cause of action has arisen outside of this state, and, by the laws of the place where it arose, an action thereon is there barred by lapse of time, no such action shall be maintained in this state unless the plaintiff be a citizen of the state who has owned the cause of action ever since it accrued.” Id.- at 558, 40 S.Ct. 402 (emphasis added). The Court characterized this statute — phrased in “precisely the same” terms as “those of several other states” — as granting a “nonresident the same rights in the Minnesota courts as a resident citizen has, for a time equal to that of the statute of limitations where his cause of action arose.” Id. at 560, 40 S.Ct. 402 (emphasis added).
Precedent. Court decisions uniformly support my interpretation. The Eleventh Circuit faced Cruz Martinez’s precise argument and rejected it. Here is what the court said: “Weighing heavily against [the defendant’s] position is the fact that for over a century, the term ‘lapse of time’ has been commonly associated with a statute of limitations violation.... Thus, we hold that the ‘lapse of time’ provision in [the U.S.-Bahamas] Extradition Treaty refers to the running of a statute of limitations and not to a defendant’s Sixth Amendment right to a speedy trial.” Yapp v. Reno, 26 F.3d 1562, 1567-68 (11th Cir.1994). A district court has reached the same conclusion. See Gonzalez v. O’Keefe, No. C 12-2681 LHK (PR), 2014 WL 6065880, at *2-4 (N.D.Cal. Nov. 12, 2014). So have several magistrate judges. See In re Extradition of Flores Ortiz, No. 10-MJ-2016-JMA, 2011 WL 3441618, at *5-6 (S.D.Cal. Feb. 9, 2011); In re Extradition of Salazar, No. 09MJ2545-BLM, 2010 WL 2925444, at *6-7 (S.D.Cal. July 23, 2010); United States v. Garfias, No. CR-09-xr-90128, 2009 WL 2580641, at *2-3 (N.D.Cal. Aug. 20, 2009).
No precedent still on the books goes the other way.
Also notable are the many cases where the criminal defendant did not even raise the speedy-trial claim, as opposed to a statute-of-limitations claim. If imitation is the sincerest form of flattery, its opposite must be the most credible form of disagreement. Many courts of appeals, including our own, have declined to hold that a lapse-of-time clause includes the right to a speedy trial. The only reason these courts did not squarely address the issue is because not one of the defendants thought the point was worth their time— and thus did not even argue that the phrase “lapse of time” included a speedy-trial right. See Skaftouros v. United States, 667 F.3d 144, 161-62 (2d Cir.2011) (Greece); Sainez v. Venables, 588 F.3d 713, 715-17 (9th Cir.2009) (Mexico); Murphy v. United States, 199 F.3d 599, 602-03 (2d Cir.1999) (Canada); In re Extradition ofDrayer, 190 F.3d 410, 415 (6th Cir.1999) (Canada); Ross v. U.S. Marshal for E. Dist. of Okla., 168 F.3d 1190, 1193-95 (10th Cir.1999) (United Kingdom); In re Extradition of Kraiselburd, 786 F.2d 1395, 1398-99 (9th Cir.1986) (Kennedy, J.) (Argentina); Kamrin v. United States, 725 F.2d 1225, 1227-28 (9th Cir.1984) (Australia); In re Extradition of Ramos Herrera, 268 F.Supp.2d 688, 697-99 (W.D.Tex.2003) (Mexico); In re Extradition of Suarez-Mason, 694 F.Supp. 676, 686-87 (N.D.Cal. 1988) (Argentina); In re Extradition of Liuksila, No. 13-970 DAR, 74 F.Supp.3d 4, 11-16, 2014 WL 5795244, at *6-9 (D.D.C. Nov. 7, 2014) (Finland); United States v. Gonzalez, No. CV 13-1867 R(FFM), 2014 WL 1383972, at *7-10 (C.D.Cal. Apr. 9, 2014) (Mexico); In re Extradition of Johnson, No. 12-65M, 2012 WL 4973938, at *8-10 (W.D.Pa. Oct. 17, 2012) (Mexico). The Ninth Circuit has gone so far as to describe the lapse-of-time *562 language in this treaty as “embodyfing]” a “limitations requirement.” Clarey v. Gregg, 138 F.3d 764, 767 (9th Cir.1998).
The majority responds that two of the cases (Murphy and Kamrin) involved lapse-of-time provisions relating only to the law of the requesting party- — Australia in the one. and Canada in the other. Supra at 549. But how that could make a difference eludes me. In each instance, the laws of the requesting party included speedy-trial-like protections. See Canadian Charter of Rights and Freedoms § 11(b) (“Any person charged with an of-fence has the right ... to be tried within a reasonable time..”); Jago v. District Court (1989) 168 CLR 23 (Austl.) (declining to recognize a “special right to a speedy trial” but acknowledging that undue delay can result in prejudice and thereby violate a defendant’s right to a fair trial, and citing Barker v. Wingo). The majority adds that one of the cases (Kraiselburd) included a speedy-trial claim. Supra at 549. Yes indeed. But the defendant grounded his claim on a different clause, one giving fugitives “the right to use such remedies and recourses as are provided by the law of the requested Party.” 786 F.2d at 1398. That, then, was a case involving a defendant intent on bringing a speedy-trial claim but who opted against using the “lapse of time” clause in the same treaty to do so.. That is not just the case of the dog who didn’t bark. Chisom v. Roemer, 501 U.S. 380, 396 n. 23, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991). It is the case of the dog who, even when he did bark, chose to bark up a different tree.
Commentary. Scholars have joined the chorus. The Third Restatement of Foreign Relations Law discusses “lapse of time” in terms of “statutes of limitations,” “periods of limitations,” and “time-bar[s].” Restatement (Third) of the Foreign Relations Law of the United States § 476 cmt. e (1987). It does not refer to speedy-trial rights as a ground for resisting extradition. A scholar recently rejected the notion, concluding that “the right to a speedy trial simply ha[s] no application in international extradition proceedings, either on the force of the Sixth Amendment alone, or through a ‘lapse of time’ provision in a treaty.” Roberto Iraola, Due Process, the Sixth Amendment, and International Extradition, 90 Neb. L.Rev. 752, 783 (2012). Nor is this discussion a modern invention. A nineteenth-century treatise considered extraditions barred by “lapse of time” and by “statutes of limitations” to be one and the same. John B. Moore, A Treatise on Extradition and Interstate Rendition § 373 (1891).
The model treaty promulgated by the United Nations to help countries create new extradition regimes also supports this view. That document gives States a variety of options to deal with “lapse of time”: for example, by “providing] that acts of interruption in the requesting State should be recognized in the requested State.” G.A. Res. 52/88, Annex, art. 3(2) & n.9, U.N. Doc. A/RES/52/88 (Dec.’ 12, 1997). This flexibility, the accompanying best-practices manual explains, stems from the reality that “[djomestic legal frameworks governing lapse of time often vary widely, with various formulae for calculating the expiration of the statutory period.” Revised Manuals on the Model Treaty on Extradition and on the Model Treaty on Mutual Assistance in Criminal Matters ¶ 55, at 19, U.N. Office on Drugs & Crime, http://www.unodc.org/pdflmodeLtreaty_ extradition_revised-jnanual.pdf (last visited July 9, 2015) (emphasis added).
Default rule. Even if there were some ambiguity about whether the phrase “barred by lapse of time” covered statutes of limitations and speedy-trial rights (which, with respect, there is not), that *563 would not change things. Any ambiguity in an extradition treaty must be construed in favor of the “rights” the “parties” may claim under it. Factor v. Laubenheimer; 290 U.S. 276, 293-94, 54 S.Ct. 191, 78 L.Ed. 315 (1933). The parties to the treaty are countries, and the right the treaty creates is the right of one country to demand the extradition of fugitives in the other country — to “facilitate extradition between the parties to the treaty.” See M. Cherif Bassiouni, International Extradition: United States Law and Practice 134 (5th ed.2007). As the First Circuit puts the point, Factor requires courts to “interpret extradition treaties to produce reciprocity between, and expanded rights on behalf of, the signatories.” In re Extradition of Howard, 996 F.2d 1320, 1330-31 (1st Cir.1993). The point of an extradition treaty after all is to facilitate extradition, as any country surely would agree ex ante. In the face of one reading of “lapse of time” that excludes the speedy-trial right and another reading that embraces it, Factor says we must prefer the former.
This default rule accords with comity considerations that lurk beneath the surface of all extradition cases. Courts must take care to avoid “supervising the integrity of the judicial system of another sovereign nation” because doing so would “directly conflict with the principle of comity upon which extradition is based.” Jhirad v. Ferrandina, 536 F.2d 478, 484-85 (2d Cir.1976); see 18 U.S.C. § 3181(b). Respect for the sovereignty of other countries, explains why an American citizen who “commits a crime in a foreign country ... cannot complain if required to submit to such modes of trial ... as the laws of that country may prescribe for its own people.” Neely v. Henkel, 180 U.S. 109, 123, 21 S.Ct. 302, 45 L.Ed. 448 (1901). And it explains why “[w]e are bound by the existence of an extradition treaty to assume that the trial [that occurs after extradition is granted] will be fair.” . Glucksman v. Henkel, 221 U.S. 508, 512, 31 S.Ct. 704, 55 L.Ed. 830 (1911) (Holmes, J.). These constraints reflect the reality that “political actors,” not judicial ones, are best equipped to make the “sensitive foreign policy judgments” an extradition request demands. Hoxha v. Levi, 465 F.3d 554, 563 (3d Cir.2006). The habeas power does not come with the authority to interfere with proceedings “inevitably entangled in the conduct of our international relations,” Romero v. Int’l Terminal Operating Co., 358 U.S. 354, 383, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), unless the treaty demands it. Just recently, the Supreme Court reminded Congress to tread carefully before entangling itself in American foreign policies customarily overseen by the Executive Branch. Zivotofsky ex rel. Zivotofsky v. Kerry, — U.S.-, 135 S.Ct. 2076, 2094-96, 192 L.Ed.2d 83 (2015). Our court would be wise to heed the same advice here.
Interpreting this treaty in a way that suddenly sweeps speedy-trial rights into its coverage does not honor these objectives and would affirmatively disserve them. Because the constitutional speedy-trial right has no fixed time limit, in contrast to statutes of limitations, what ex-traditee will not raise the claim in all of its indeterminate glory? The mutability of the right makes it impossible to know how much delay is too much delay. Take the alleged delay in Cruz Martinez’s case: around six years. That is not enough to state a speedy-trial claim in view of other considerations, some courts have said, e.g., United States v. Bass, 460 F.3d 830, 838 (6th Cir.2006), but it very well could be, some other courts have said, e.g., United States v. Velazquez, 749 F.3d 161, 186 (3d Cir.2014). What of the question of fault? Whether the State or a defendant is more to blame for untoward delays is “[t]he flag *564 all litigants seek to capture” in a speedy-trial claim. United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). Before we task the courts of both countries with refereeing these ineffable — and deeply sensitive — inquiries, we should be sure the negotiating countries wanted them as umpires.
In the final analysis, Cruz Martinez’s argument comes up short. No matter where I look — to the text of this treaty, to the text of other treaties, to judicial decisions interpreting those treaties, to commentaries explaining those treaties, to guidance explaining how to draft those treaties, to the Factor default rule^all roads lead to the same conclusion. The United States and Mexico did not impose a speedy-trial limit on the category of extraditable criminals when they referred to the “prosecution” and “enforcement” of certain offenses that have “become barred by lapse of time.”
B.
In arguing that “lapse of time” means something else, Cruz Martinez and the majority note that this is not the first extradition treaty between the United States and Mexico. A previous' version prohibited extradition when prosecution or enforcement “has become barred by limitation.” Extradition Treaty, U.S.-Mex., art. 111(3), Feb. 22, 1899, 31 Stat. 1818. The present version, they point out, replaced the phrase “barred by limitation” with the phrase “barred by lapse of time” and in the process, they submit, expanded the scope of the provision to cover speedy-trial rights.
But this argument assumes that the new phrase captures more ground than the old phrase with respect to the issue at hand. It does not. The word “time” appears nowhere in the phrase “barred by limitation.” But the context of the treaty, all authority interpreting the treaty, and both parties to this ease agree that the phrase refers only to time limitations — not anything and everything that might “limit” a criminal prosecution, such as all of the criminal procedure protections that appear in the Bill of Rights and all of the state and federal laws that protect criminal suspects. The fact that the old phrase impliedly included a time limitation eliminates the significance of the new phrase’s refer- ’ ence to “time” no matter how the phrase is glossed: “time bar,” “time limitation,” “lapse of time,” “lapse in time,” “passage of time,” and so on. Cruz Martinez recognizes as much when he concedes that the phrase “barred by limitation” “restrict[s] the [old treaty’s] time-bar provision to the operation of statutes of limitations.” Appellant’s Br. 47-49 (emphasis added). If the old treaty contained a time-bar provision, as he admits it did, there is nothing about the new language that adds to the provision’s breadth — and thus nothing that gives him traction in claiming that it suddenly extends to speedy-trial rights. Is it really possible, as the majority seems to think, that “barred by lapse of time” and “barred by time limitation” both cover statutes of limitations but just one of them also covers speedy-trial rights? That is a heavy lift as a matter of linguistics and common sense.
Even if, in the face of all evidence to the contrary, the new phrase somehow some way covered more ground than the old phrase, Cruz Martinez has not shown that “barred by lapse of time” encompasses the right to a speedy trial. Even the most ruthlessly textual analysis of the phrase must return to this reality: Time does the barring, and the constitutional speedy-trial right does not have a fixed time limit, in contrast to statutes of limitations, and it does contain several other requirements beyond just delay, in contrast to statutes *565 of limitations. That is why it makes no difference that “lapse of time” or variations on the phrase have appeared in the context of several other doctrines with a temporal component: laches, estoppel, the Speedy Trial Act, and the speedy-trial right itself. Each of these other dodtrines regards the (relative) passage of time as a necessary condition, not a sufficient one, meaning time and other considerations together do the “barring.” Not so with this clause.
And that is why it makes no difference that the phrase “lapse of time” might well have a broader meaning in isolation. It might mean all kinds of things in other settings. Witness Hamlet’s plaintive request to his father’s ghost: “Do you not come your tardy son to chide, that, lapsed in time and passion, lets go by the important acting of your dread command?” William Shakespeare, Hamlet act 3, sc. 4. The question, however, is what words mean “in their context,” not in the abstract or in other settings. To think otherwise about the matter calls to mind the spelunker who leaves home with an excellent map and a broken headlamp.. One is of no use without the other. So too of text without context. Not a single extant source of authority in this context — the language of an international extradition treaty— equates “barred by lapse of time” with “barred by the Sixth Amendment.”
One court at one point, I must acknowledge, agreed with Cruz Martinez’s reading. The court in In re Extradition of Mylonas, 187 F.Supp. 716, 721 (N.DAla. 1960), ruled that the phrase “lapse of time or other lawful cause” applied to speedy-trial violations, but it did so without any explanation. When it came time to assess whether an explanation for the Mylonas court’s conclusion could be found, the Eleventh Circuit came up dry, and “expressly disapprove^]” the district court’s half-sentence ruling. Martin v. Warden, 993 F.2d 824, 829 n. 8 (11th Cir.1993). That just one court in history has agreed with Cruz Martinez’s position — for a momentary lapse of time, shall we say — tells us all we need to know about the frailty of this position.
Nor does the dissent in Yapp, 26 F.3d at 1568-73 (Carnes, J., dissenting), another Eleventh Circuit case, add any fuel to this argument. Judge Carnes endorsed the American government’s position in this case when he explained that a hypothetical treaty provision referring only to “lapse of time” would refer “only to statutes of limitation[s].” Id. at 1570. It is not often that all relevant majority opinions and dissents support the same position. Yet that is just the case here — or at least it was until today’s decision.
The majority also leans on the phrase “enforcement of the penalty” in Article 7, claiming that it eliminates “any doubt that the scope of [Article 7] extends beyond the initiation of prosecution” and incorporates speedy-trial protections. Supra at 545 n. 1. “[A]ny doubt”? The majority elsewhere acknowledges that “fair-minded jurists could dispute th[e] conclusion.” Id. at 547. Be that as it may, the point is wrong. In many civil-law countries, statutes of limitations bar not only the initiation of prosecutions but also excessive delays between conviction and sentencing. See S. Exec. Rep. .No. 104-32, at 13. As it turns out, the law of Oaxaca — the state where Cruz Martinez’s alleged crime occurred — provides as much. “The statute of limitations,” it says, “shall be interrupted, and consequently, the established periods shall be reset and shall begin anew, at the time of the reading of the charges at arraignment or at the time of the reading of the verdict, even if subject to appeal.” R. 2-19 at 2 (emphasis added). The statute of limitations in other words operates to pre *566 vent undue postponement between conviction and the “enforcement of the penalty,” refuting the majority’s assertion that the “enforcement” language broadens Article 7’s scope.
Cruz Martinez insists that we should not be troubled by the absence of supporting authority or the circuit split his argument creates. He observes that the Eleventh Circuit had not yet overturned Mylonas’s half-sentence ruling when the United States and Mexico concluded the revised treaty at issue. But it does not follow that the United States meant to incorporate and Mexico meant to import that unexplained, lapse-in-reasoning, less-than-landmark ruling into the treaty. ' Start with the reality that this treaty does not use the same language as the treaty discussed in Mylonas. That one said “lapse of time or other lawful cause,” 187 F.Supp. at 721 (emphasis added); this one says “lapse of time” alone. It would be odd to conclude that the treaty’s drafters meant to adopt this trial court’s decision but then used different — and narrower — language. The treaty’s drafting history confirms as much. Its transmittal materials do not mention the Sixth Amendment once, an omission that takes on special significance in light of the Senate Committee on Foreign Relations’ decision to include a list of differences between the treaty and “previously ratified” treaties. See S. Exec. Rep. No. 96-21, at 19 (1979). The speedy-trial right appears nowhere on that list.
Other agreements drafted during the same period as the U.S.-Mexico Treaty confirm that Mylonas was not on anyone’s radar. At least seven extradition treaties drafted between 1960 (when Mylonas was handed down) and 1993 (when it was overruled) include provisions similar to Article 7 of the U.S.-Mexico Treaty. The Senate Executive Reports accompanying each of these documents indicated that “lapse of time” referred to statutes of limitations. S. Exec. Rep. No. 98-33, at 4-5 (1984) (Italy); S. Exec. Rep. No. 98-30, at 6 (1984) (Costa Rica); S. Exec. Rep. No. 98-29, at 5 (1984) (Thailand); S. Exec. Rep. No. 96-18, at 26 (1979) (Turkey); S. Exec. Rep. No. 93-19, at 3 (1973) (Paraguay, Uruguay); S. Exec. Rep. No. 91-20, at 3-4 (1970) (New Zea-land); see United States v. Stuart, 489 U.S. 353, 366-68, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989) (“[A] treaty’s ratification history and its subsequent operation” can “assist ... in ‘giving effect to the intent of the Treaty parties.’ ” (quoting Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 185, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982))). I have not found, and neither Cruz Martinez nor the majority has produced, a shred of evidence suggesting that anyone meant to deviate so drastically from a consensus so settled.
The context of this interpretive dispute — language in an extradition treaty— dispenses with another of Cruz Martinez’s rejoinders: that, in other circumstances, the lapse-of-time shorthand can refer not just to statutes of limitations but also to other doctrines rooted in the passage of time. Take a comment in the Third Restatement equating “lapse of time” with a “delay in presentation” due to “negligence or laches.” Restatement, supra, § 902 cmt. c. Section 902, however, concerns not extradition but country-versus-country disputes involving violations of obligations owed by one to the other. It regulates not the defenses of a person facing extradition but the defenses of a country accused by another for failing to live up to its word. Id. The section thus does not prove that the phrase “lapse of time” incorporates an individual speedy-trial right in this setting, especially when the one pertinent comment from the Restatement indicates that, for extradition purposes, the term “lapse of time” extends to limitations periods only. Id. § 476 emt.e.
*567 Cruz Martinez’s reliance on Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), is a figleaf. Doggett holds that, for Sixth Amendment purposes, a government’s failure to seek a defendant’s extradition may show that it (as opposed to the defendant) is “more to blame” for a trial’s delayed start. Id. at 651-53, 112 S.Ct. 2686. I of course agree that the Sixth Amendment contains a speedy-trial clause, that a citizen may invoke the clause in prosecutions in this country, and that the cause for any delay is relevant to this inquiry. But Doggett does not remotely stand for the proposition that, for purposes of treaty interpretation, the Sixth Amendment qualifies as a law barring prosecution or enforcement “by lapse of time.”
By shearing the phrase “lapse of time” from its context, moreover, Cruz Martinez introduces a serious complication. If “lapse of time” covers the constitutional speedy-trial guarantee, there is no reason to think it would not cover the statutory one. The Speedy Trial Act says that “the trial of a defendant charged ... with the commission of an offense shall commence within seventy days” of the indictment. 18 U.S.C. § 3161(c)(1). Now that is a time bar. Even though this speedy-trial right — the one Cruz Martinez has not invoked — contains a' threshold time bar, that seventy days may be extended by “a number of excusable delays that do not subtract time from the clock.” Id. Examples include time spent on competency examinations, interlocutory appeals, removal proceedings, consideration of plea agreements, continuance requests, and international discovery. See 18 U.S.C. § 3161(h). Many of these procedures have a uniquely American cast, making the statute difficult if not impossible to apply to the actions of a country without them. The statute thus makes time extensions no less important than time limits. Yet Cruz Martinez’s undifferentiated definition would force us to apply this statute too in future cases, as he acknowledges. •
That will leave foreign nations with just seventy days to issue any extradition request after the Act’s clock starts ticking in order to avoid debates about whether proper extensions have been given. What happens next will be the kudzu-like spreading of Speedy Trial Act claims and the choking out of statute-of-limitations claims — and thus the choking out of the one claim that all had agreed was covered by the phrase “barred by lapse of time.” In case after case, extradition requests that violate no statute of limitations will be denied for Speedy Trial Act violations.
Take Cruz Martinez’s situation. The majority correctly finds that the U.S. and Mexican statutes of limitations have not run. Yet because more than seventy days have passed since Mexico issued an arrest warrant for Cruz Martinez, the Speedy Trial Act would (if applied) prevent his extradition. The same is true of other cases. Consider United States v. Garfias, a case from the Northern District of California that involved another extradition request from Mexico. 2009 WL 2580641, at *1. A magistrate judge held that the U.S. statute of limitations did not prevent Garfi-as’s extradition, id. at *3-5 — but the Speedy Trial Act would seem to act as a bar due to the nearly eight-year delay between Mexico’s arrest warrant and its extradition request, id. at *1. The list goes on. See, e.g., Sainez v. Venables, 588 F.3d 713, 715-17 (9th Cir.2009) (finding that U.S. and Mexican statutes of limitations did not bar an individual’s extradition in a case where there was a seven-year gap between the issuance of a Mexican arrest warrant and the extradition request); In re Flores Ortiz, 2011 WL 3441618, at *1, *6-7 (holding that Flores Ortiz’s extradition did not violate the U.S. statute of *568 limitations in a case where there was nearly a three-year delay between the issuance of a Mexican arrest warrant and the extradition request); In re Salazar, 2010 WL 2925444, at *4-5 (finding that Salazar’s extradition did not violate Mexican or U.S. statutes of limitations in a case where there was nearly a ten-year delay between the issuance of a Mexican arrest warrant and the extradition request). Indeed, after today’s decision, I know of no lapse-of-time case in which the most fruitful line of attack will not be the statutory, or for that matter the constitutional, speedy-trial claim.
I am not sure what to make of the majority’s first response — that the “barred by lapse of time” provision in Article 7 would not apply to statutory claims because the statute gives district courts discretion to dismiss with or without prejudice and thus the seventy-day limit would not necessarily “bar” the prosecution. 18 U.S.C. § 3162(a)(2); supra at 551-52. If that theory sounds familiar, it is because it duplicates my theory of. the case and my suggestion about how to handle statutory and constitutional speedy-trial claims. Of course, neither speedy-trial right is a “lapse of time” provision that “bars” prosecutions. But if one had to pick one or the other as a candidate, one would assuredly pick the one that has a definitive time limit — seventy days — and thus parallels statutes of limitations in at least me respect. That the district court has discretion to dismiss some statutory speedy-trial violations without prejudice adds no fuel to the argument at any rate. That means only that the extraditee will not always prevail; but that was always a possibility given the many exceptions to the statutory speedy-trial rights. And it is no answer to the constitutional claim, where dismissals with prejudice are the rule. United States v. Young, 657 F.3d 408, 413 (6th Cir.2011); see also Strunk v. United States, 412 U.S. 434, 439-40, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).
I also am not sure what to make of the majority’s second response — that, even if Article 7 covers statutory speedy-trial claims, there is nothing to worry about because the statute has many exceptions, including “[a]ny period of delay resulting from the absence or unavailability of the defendant.” Supra at 552 (quoting 18 U.S.C. § 3161(h)(3)(A)). But of course the constitutional claim has many exceptions, including this one. Doggett, 505 U.S. at 651, 112 S.Ct. 2686 (To assess a constitutional speedy-trial claim, courts must determine “whether the government or the criminal defendant is more to blame for th[e] delay.”); Wilson v. Mitchell, 250 F.3d 388, 395 (6th Cir.2001) (rejecting a constitutional speedy-trial claim where the defendant “actively evaded discovery”). I thus see no coherent way to distinguish the two claims — and least of all a way to make the seventy-day claim the one that does not apply. That leaves me where I started. Under the majority’s decision, the central argument, if not the only argument, in future “barred by lapse of time” claims will turn on speedy-trial rights (statutory or constitutional), not statute-of-limitations rights, even though the latter have been the only claim covered by the phrase — until now.
The majority adds that, because the phrase “barred by lapse of time” could be read broadly, it must be read broadly. Not even Cruz Martinez embraces this theory, as he never argues that Factor requires ambiguous treaty provisions to be read in his favor. In fact, neither of his briefs rites Factor at all, much less distinguishes it. There is a reason for the omission. Factor, remember, speaks in terms of maximizing the “rights” the “parties” to a treaty may claim under it. The parties to this treaty are countries, not their citi *569 zens, and the right the parties may claim is the right of a country to demand extradition, not the right of a citizen to demand a speedy trial. The majority’s contrary approach, which substitutes “extraditees” for “signatories” and constitutional rights for treaty rights, misapprehends how the Factor presumption works.
My conclusion — that the right conferred by an extradition treaty is the right to request extradition — does not change because the provision at issue places limits on extradition. The same was true for the provision in Factor, which permitted extradition “only ... upon such evidence of criminality as, according to the laws of the place where the fugitive ... shall be found, would justify his apprehension and commitment for trial if the crime ... had there been committed.” 290 U.S. at 287 n. 1, 54 S.Ct. 191. Great Britain asked the United States to extradite John Factor for conduct that was criminal on that side of the pond but legal on this side of the pond. To overcome the fact that the applicable treaty did not implement the principle of specialty, Factor asked the Court to read that restriction into the words “according to the laws of the place where the fugitive ... shall be found.” If the majority were right, the Court would have construed that provision not to promote extradition but to protect the extraditee. It did the opposite. The only “right” the Court mentioned, indeed the only “right” the Court analyzed, was “the legal right to demand [Factor’s] extradition.” Id. at 287, 54 S.Ct. 191.
The majority also disregards cases from circuits that have remained faithful to what Factor says. Consider the First Circuit’s opinion in Howard. That case concerned a treaty provision barring extradition when the request was “made with a view to try or punish [the extraditee] on account of his race, religion, nationality or political opinions.” 996 F.2d at 1330. The United Kingdom asked the United States to extradite Curtis Howard to stand trial for murder. Howard resisted by arguing that these terms included all “nationality-based and race-based biases” — -as opposed to “only those [biases] directly affecting” him. Id. at 1329. If the majority were right, the First Circuit should have construed that provision not to promote extradition but to protect the extraditee. Relying on Factor, the First Circuit refused. Any other result, it explained, would convert the extradition treaty into “an impediment to extradition” — into “a non-extradition treaty” in other words. Id. at 1330.
Nor do the four cases cited by the majority help Cruz Martinez. See supra at 547 n. 3 (citing Nielsen v. Johnson, 279 U.S. 47, 52, 57-58, 49 S.Ct. 223, 73 L.Ed. 607 (1929); Jordan v. Tashiro, 278 U.S. 123, 127, 49 S.Ct. 47, 73 L.Ed. 214 (1928); Asakura v. City of Seattle, 265 U.S. 332, 339-40, 44 S.Ct. 515, 68 L.Ed. 1041 (1924); Geofroy v. Riggs, 133 U.S. 258, 271-72, 10 S.Ct. 295, 33 L.Ed. 642 (1890)). Each of these cases involved “friendship, commerce, and navigation treaties” between the United States and another country— treaties that were “primarily concerned with the trade and shipping rights of individuals.” Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 185-86, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982). The Court, no surprise, interpreted ambiguous individual-rights-creating provisions in those treaties with an eye toward maximizing citizens’ rights. The same cannot be said for an extradition treaty designed to create a right that would not exist in the treaty’s absence: the right of a .State to demand the “surrender of a fugitive” living in another State. Factor, 290 U.S. at 298, 54 S.Ct. 191; see Howard, 996 F.2d at 1329.
That leaves what may be Cruz Martinez’s ultimate worry: that rejecting his interpretation of the treaty would allow *570 Mexico to seek the extradition of an American citizen years after a valid Mexican arrest warrant has issued. Just such a prospect exists here, he claims, given his claim that he never tried to hide his address from American or Mexican authorities. But it is not this Court’s “province” to expand the treaty’s scope in search of a seemingly “desirable result.” EEOC v. Abercrombie & Fitch Stores, Inc., — - U.S. -, 135 S.Ct. 2028, 2033, 192 L.Ed.2d 35 (2015). Otherwise, the treaty would mean one thing for some fact patterns and something else for other fact patterns. Treaty interpretation, as opposed to executive-branch discretion, does not turn on shifting fact patterns. Cruz Martinez’s arguments on this score are best directed at the Secretary of State, who retains “sole discretion to determine whether [someone] should actually be extradited.” United States v. Kin-Hong, 110 F.3d 103, 109 (1st Cir.1997); see Extradition Treaty, U.S.Mex., art. 9(1), supra, 31 U.S.T. at 5065. That discretion would permit any untoward extradition from going forward, including potentially this one.
Making matters worse, the majority creates the possibility of renewed discovery to determine whether a speedy-trial violation has occurred. Supra at 555-57. If so, the district court will have to wade into the complex world of diplomatic give-and-take, determining whether U.S. and Mexican communications reveal a justifiable reason for the delay in Cruz Martinez’s extradition. Prying into consular correspondence is precisely the sort of thing we should avoid unless the treaty expressly requires it. The State Department is better situated to access and assess the sorts of transnational communiques that Cruz Martinez will seek on remand — which is why his requests for relief are better directed to our diplomats than to our judges.
By endorsing Cruz Martinez’s novel reading of the phrase “barred by lapse of time,” the majority has set off on a bold adventure. Its holding contradicts the text and context of the treaty. Its reasoning undermines the background principles that have guided extradition in this country for 200 years and counting. And its result, unsupported by any relevant precedent, departs from the law of other circuits on not one but two issues.
But that may be the least of its problems. Today’s holding will control all future extradition hearings the magistrate judges in our circuit might conduct. And should a magistrate refuse to certify someone for extradition on account of that holding, the United States may not be able to appeal that refusal — though Mexico could refile the extradition request (which would only make any speedy-trial violation worse). See In re Mackin, 668 F.2d 122, 126-30 (2d Cir.1981) (Friendly, J.). As a consequence, savvy fugitives in the United States facing charges in Mexico (or any other country with a “barred by lapse of time” treaty provision) will receive speedy-trial protections if they flee to the four States of our circuit but not if they flee to other States in our country. And'Mexico will be forced to structure its extradition requests around the whims of our judicial geography, to say nothing of our malleable Sixth Amendment jurisprudence.
I respectfully dissent.